[No. 4861.   Decided January 11, 1904.]

THE STATE OF WASHINGTON, *Appellant,* v. CITY OF ABERDEEN, *Respondent.*[1]

STATUTE OF LIMITATIONS—VESTED RIGHTS—RETROACTIVE EFFECT OF AMENDMENT—ACTION BY STATE—CLAIM AGAINST MUNICIPAL CORPORATIONS—MORAL OBLIGATIONS. It was competent for the legislature by Laws 1903, p. 26, to amend the statute of limitations (Bal. Code, § 4807) by providing that it shall never be pleaded to an action brought by or for the benefit of the state, in so far as the same affects moral claims against municipal corporations, although the statute had fully run prior to the amendment of the law, since a city is a subordinate subdivision of the state government and may be obligated to pay claims not strictly binding in law, if just and equitable in their character.

[1]Reported in 74 Pac. 1022.

SAME—Query as to whether such amendment could be made retroactive in so far as it affects contractual obligations which involve private individuals.

SAME—LICENSE FEES DUE FROM CITY TO STATE.   The claim of the state against a city for a percentage of the liquor license fees collected by the city as an incident to its police powers, and due under the law to the state, is a well grounded moral or equitable obligation although barred by the statute of limitations, and the bar may be removed by the legislature without violating vested rights or the constitutional prohibition against the taking of property without due process of law.

Appeal from an order of the superior court for Chehalis county, Irwin,.J., entered September 26, 1903, sustaining a demurrer to one of plaintiff's causes of action, and from that part of the judgment thereupon entered dismissing said cause.   Reversed.

*The Attorney General,* for appellant.

*E. H. Fox,* for respondent.

HADLEY, J.—The state of Washington instituted this action against the city of Aberdeen, a municipal corporation, to recover a balance alleged to be due the state from said municipality, on account of moneys received by it for the issuance of licenses to sell intoxicating liquors. The demand is made under and by virtue of the statute of 1888, as found in § 2934, Bal. Code, which provides that ten per cent of the annual liquor license fees, paid to the treasurer of an incorporated city or town, shall be paid into the general fund of the state treasury.

The complaint contains two causes of action.   The first alleges that between the 3d day of June, 1890, and the 1st day of September, 1900, the city received, as fees for liquor licenses, the sum of $39,552.05 ; all of which except the sum of $350, paid to the state, it has converted to its own use.   Judgment is demanded under the first cause of action for $3,955.20, less $350 paid as aforesaid,

the sum demanded being the unpaid balance of ten per cent of the total collections during the period named. The second cause of action alleged that between the 31st day of August, 1900, and the 20th day of August, 1903, the city collected the sum of $42,450; all of which it has converted to its own use, and judgment is demanded for $4,245, being ten per cent of the amount collected within the last named period.

The city demurred to each cause of action on the ground that sufficient facts were not stated to authorize recovery; and, to the first cause of action, the additional ground of demurrer was interposed that the action was not commenced within the time limited by law. The demurrer was sustained as to the first cause of action, and overruled as to the second. Each party refused to plead further, and judgment was thereupon entered dismissing the first cause of action, and awarding recovery for the amount prayed under the second. The state has appealed from the order sustaining the demurrer as to the first cause of action.

The only question involved is, was the first cause of action barred by the statute of limitations when the suit was begun? Section 4807, Bal. Code, provides as follows:

"The limitations prescribed in this chapter shall apply to actions brought in the name of the state, or any county or other public corporation therein, or for its benefit, in the same manner as to actions by private parties. An action shall be deemed commenced when the complaint is filed."

The above statute was in effect prior to the time any of the collections were made by the respondent city, as set forth in the complaint, and it will be observed that, by the terms thereof, the limitation statutes were specially declared to apply to the state. Under the terms of that stat-

ute, at least, the principal portion of the amount sought
to be recovered under the first cause of action was barred
when this action was begun. But, by an act of the legis-
lature of 1903, said section was amended. See Session
Laws 1903, p. 26, § 1. The amending section is as fol-
lows:

"Section 35 of the code of civil procedure of Washing-
ton, 1881, the same being section 4807 of Ballinger's
Annotated Codes and Statutes of Washington, shall be
amended to read as follows: Section 35 (section 4807).
The limitations prescribed in this act (chapter) shall ap-
ply to actions brought in the name or for the benefit of
any county or other municipality or *quasi* municipality of
the state, in the same manner as to actions brought by pri-
vate parties: *Provided,* That there shall be no limitation
to actions brought in the name or for the benefit of the
state, and no claim of right predicated upon the lapse of
time shall ever be asserted against the state: *And further
provided,* That no previously existing statute of limitation
shall be interposed as a defense to any action brought in
the name of or for the benefit of the state, although such
statute may have run and become fully operative as a de-
fense prior to the adoption of this act, nor shall any cause
of action against the state be predicated upon such a stat-
ute. An action shall be deemed commenced when the
complaint is filed."

It will be seen that the new statute provides that there
shall be no limitation to actions brought in the name, or
for the benefit of, the state; and further, that no previously
existing statute of limitation shall be interposed as a de-
fense to an action brought for the benefit of the state,
although such statute may have fully run prior to the
adoption of the above amendment. Respondent contends
that the retroactive features of said amendment violate the
provisions of the federal and state constitutions that no
person shall be deprived of property without due process
of law. It is urged that the right to plead the statute of

limitations, when it has once fully run, is a vested right, and that the act of 1903 is void because it takes away that right. On the other hand, appellant contends that the right to plead the statute in cases of obligations arising on contracts express or implied is merely a remedial one, which may be taken away even after the statute has fully run.

The leading case cited by appellant is *Campbell v. Holt,* 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483. That case holds that the repeal of a statute of limitation of actions on personal debts does not deprive a debtor of his property in violation of the Fourteenth Amendment to the constitution of the United States, although the right of action against him is already barred. The opinion discusses authorities and principles extensively, and clearly draws a distinction between vested rights in real and personal property which arise by lapse of time and adverse possession, thus acting upon title, and the right to plead the statute of limitations as against a mere personal obligation or debt arising out of a contract express or implied. The following cases cited also hold that the right to plead the statute of limitations as to debts is a mere remedial one and is not a vested property right: *Guiterman v. Wishon,* 21 Mont. 458, 54 Pac. 566; *Townsend v. Jemison,* 9 How. 407, 13 L. Ed. 194; *De Cordova v. Galveston,* 4 Tex. 470; *Lewis v. Davidson,* 51 Tex. 251; *Jones v. Jones,* 18 Ala. 248. See, also, 10 Rose's Notes on U. S. Rep., pp. 1174, 1175.

It must be conceded that there is substantial conflict of authority as to whether the right to plead the statute of limitations as to debts on contracts between private individuals comes within the classification of vested rights, so as to constitute it a property right, within the meaning of the constitutional provisions. Notwithstanding the fact

5-34 WASH.

that as eminent a tribunal as the supreme court of the United States has held that it is not such, in *Campbell v. Holt, supra,* yet it will be observed by reference to page 1175 of Rose's Notes, cited above, that other courts have not followed that doctrine. See, also, *Dunbar v. Boston etc. R. Corp.,* 181 Mass. 383, 63 N. E. 916, in which Chief Justice Holmes distinguished the case then in hand from *Campbell v. Holt,* and said:

"As yet it is not necessary for us to choose between that decision and the weighty intimations to the contrary in this court and elsewhere."

In notes of Vol. 19, Am. & Eng. Enc. Law, (2d ed.) p. 171, will be found a list of cases cited as following *Campbell v. Holt,* and also an extended list as opposed to the doctrine of that case. While the argument in *Campbell v. Holt* is entitled to great weight, yet we believe the case at bar, like the Massachusetts case cited above, should be distinguished from it, and that we are not now called upon to approve or disapprove the doctrine of that case, as applied to the statute of limitations when interposed in a suit upon a contractual obligation which involves private individuals.

The obligation involved here is that of a municipal corporation to the state. A municipal corporation is a subordinate subdivision of the state government. It derives its existence, powers, and privileges from the state. The power to collect a liquor license tax was conferred by the state, as an incident to police powers pertaining to government. The city, therefore, became an agency of the state in collecting the money. In conferring the power, the state specifically provided what disposition should be made of the money when collected. Without doubt the legislature might have provided that all money so collected should be paid to the state, but, in its wisdom, it saw fit

to require but a small portion of it to be so paid. That small portion has always belonged to the state, from the moment of its collection. The city was then under both legal and moral obligations to turn it over to the state. The moral obligation still existed when the statute of 1903 became a law, notwithstanding the bar against its enforcement, under the previously existing statute of limitation. The legal bar did not remove the moral obligation; the debt still existed.

The plenary powers of the legislature over municipalities of its own creation have been held to be greater than those pertaining to private corporations or individuals, and, in pursuance of the exercise of such powers, it has been held that the legislature may compel municipalities to pay debts or claims not strictly binding in law, but which are just and equitable in their character and involve a moral obligation. The principle is stated in 1 Dillon's Munic. Corp., (4th ed.) § 75, as follows:

"The fact that a claim against a municipal or public corporation is not such an one as the law recognizes as of *legal obligation* has often been decided, by courts of the highest respectability and learning, to form no constitutional objection to the validity of a law imposing a tax and directing its payment; . . . . The cases on this subject, when carefully examined, seem to the author to go no further, probably, than to assert the doctrine that it is competent for the legislature to compel municipal corporations to recognize and pay debts or claims not binding in strict law, and which, for technical reasons, could not be enforced in equity, but which, nevertheless, are just and equitable in their character, and involve a moral obligation. To this extent and with this limitation, the doctrine is unobjectionable in principle, and must be regarded as settled, although it asserts a measure of control over municipalities, in respect of their duties and liabilities, which probably does not exist as to private corporations and individuals."

A number of cases are cited by the author in support of
the above, to some of which we shall here refer.   In *New
Orleans v. Clark,* 95 U. S. 644, 24 L. Ed. 521, it was held
that it is competent for the legislature to impose upon a
city the payment of claims, just in themselves, but which,
for some irregularity in the proceedings creating them,
can not be enforced at law.   It was further held that a
law requiring a municipal corporation to pay such a claim
is not within the provision of the constitution of Louisiana
inhibiting the passage of a retroactive law.   In that opin-
ion, at pages 654-5, Mr. Justice Field said:

"A city is only a political subdivision of the state, made
for the convenient administration of the government.   It
is an instrumentality, with powers more or less enlarged,
according to the requirements of the public, and which
may be increased or repealed at the will of the legislature.
In directing, therefore, a particular tax by such corpora-
tion, and the appropriation of the proceeds to some special
municipal purpose, the legislature only exercises a power
through its subordinate agent which it could exercise di-
rectly; and it does this only in another way when it directs
such corporation to assume and pay a particular claim not
legally binding for want of some formality in its creation,
but for which the corporation has received an equivalent.
.   .   .   The constitution of Louisiana of 1868, which
provides that no retroactive law shall be passed, does not
forbid such legislation.   A law requiring a municipal
corporation to pay a demand which is without legal obli-
gation, but which is equitable and just in itself, being
founded upon a valuable consideration received by the
corporation, is not a retroactive law,—no more so than an
appropriation act providing for the payment of a pre-
existing claim.   The constitutional inhibition does not
apply to legislation recognizing or affirming the binding
obligation of the state, or of any of its subordinate agen-
cies, with respect to past transactions.   It is designed to
prevent retrospective legislation injuriously affecting in-
'dividuals, and thus protect vested rights from invasion."

In *Sinton v. Ashbury*, 41 Cal. 525, 530, the court said:

"It is established by an overwhelming weight of authority, and, I believe, is conceded on all sides, that the legislature has the constitutional power to direct and control the affairs and property of a municipal corporation for *municipal purposes*, provided it does not impair the obligation of a contract, and by appropriate legislation may so control its affairs as ultimately to compel it, out of the funds in its treasury, or by taxation to be imposed for that purpose, to pay a demand, when properly established, which in good conscience it ought to pay, even though there be no legal liability to pay it."

See, also, *People ex rel. Blanding v. Burr*, 13 Cal. 343; *Creighton v. San Francisco*, 42 Cal. 446; *Grogan v. San Francisco*, 18 Cal. 590; *Town of Guilford v. The Board of Supervisors etc.*, 13 N. Y. 143; *Lycoming v. Union*, 15 Pa. St. 166; *Mayor etc. v. Sehner*, 37 Md. 180; *Commonwealth v. M'Gowan*, 4 Bibb. (Ky.) 62, 7 Am. Dec. 737.

In *Grogan v. San Francisco, supra*, the court said, at page 604:

"Thus, as a branch of the state government, the city levies taxes on her corporators for the use of the state. The money thus acquired is subject to the legislative control entirely."

So, in the case at bar, the money now demanded by the state was received by the city, a subordinate branch of the state government, under the direction and authority of the latter and for its use, and is therefore a subject of legislative control. It would be difficult to conceive of a more well grounded moral or equitable obligation than that of the city to pay this money to the state; and, within the principles discussed in the authorities hereinbefore mentioned, we think the state, through its legislature, had the power to say to its subordinate municipalities that what is morally and equitably due to the state shall become legally due. Such is the effect of the act of 1903, and it is there-

fore not void in its application to obligations of the municipalities to the state.

For the foregoing reasons, we hold that it was error to sustain the demurrer to the first cause of action. The judgment, in so. far as it dismissed the first cause of action, is reversed, and the cause is remanded with instructions to overrule the demurrer, and enter judgment as demanded in the complaint.

FULLERTON, C. J., and MOUNT, ANDERS, and DUNBAR, JJ., concur.