TEMPLE ET AL *v.* STATE EX REL. RUSSELL, GOVERNOR.

[86 South. 580.   In Banc. No. 21582.]

QUO WARRANTO. *Governor may sue only in general public interests.*
  *Quo warranto* proceedings to oust municipal officers cannot be brought by the Governor under section 2372, Code of 1906 (section 4764, Hemingway's Code); the power to sue granted Governor there contemplates only suits affecting the general public interests of the state as distinguished from local public interests.

  Sykes and W. H. Cook, JJ., dissenting.

Appeal from circuit court of Lafayette county.

Hon. John Falkner, Jr., Judge.

*Quo warranto* proceedings by the State of Mississippi, on relation of Lee M. Russell, Governor, to oust E. E. Temple and others from their offices as Mayor and Commissioners of the Municipality of Oxford. Judgment of ouster, and defendants appeal. Reversed and cause dismissed.

*Harry M. Bryan,* for appellants.

I deem it advisable to set out here a certain section of the constitution and certain statutes and divisible parts of statutes in order that their texts may be easily found and retained.

Article 1, section 2, Constitution of Mississippi: "No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments."

Section 4017, Mississippi Code of 1906 (Hemingway's Code, section 3012): "To what cases applicable the remedy by information in the nature of a *quo warranto* shall lie, in the name of the state, against any person or corporation offending in the following cases viz: First, Whenever any person unlawfully holds or exercises the functions of any public office, civil or military, or franchise, or any office in any corporation, city, town, or village and to try the right to any such office.

Section 4018, Mississippi Code of 1906 (Hemingway's Code, section 3013): Proceedings: How and Where. The proceedings in such cases shall be by information in the name of the state, by the attorney-general or a district attorney, on his own motion or on relation of another,

and, in a case to try the right to an office on the relation of the claimant thereof. The information shall be filed in the circuit court of the county of the residence of the defendant; or, in the case of an officer, where he acts as such; or, in case of a corporation or, pretended corporation, where its principal office or place of business may be or where it may transact any business and has an agent; or, in case of an alien or corporation acquiring or holding land contrary to law, where any of the land is situated.

Section 2372, Mississippi Code of 1906, (Hemingway's Code, Section 4764) : Powers Generally: In addition to the powers conferred and duties imposed on the governor by the constitution and by the laws as elsewhere provided, he shall have the powers and perform the duties following, viz: (n) He may bring any proper suit affecting the general public interest, in his own name for the state of Mississippi, after first requesting the proper officer so to do, and his refusal or neglect to do the same.

It is apparent from the foregoing that in such a case as is presented here, information in the nature of *quo warranto* may be filed in the name of the state (1) by the attorney-general or (2) by a district attorney (on his own motion or on relation of another) and (3) in a case to try the right to an office on the relation of the claimant thereof. The statutes are conclusive of this proposition. *Quo warranto* being an extraordinary remedy the general law of pleading with reference to parties, necessarily gives way to its special requirements.

At the outset, I take it that appellants' appeal cannot be prejudiced because of their raising the question of parties plaintiff by demurrer. Whatever objection could have been made to the form of pleading by appellees, at the proper time, the right thereto is deemed to have been waived. Even so, *Lindsey* v. *Attorney-general*, 33 Miss. 508; *Harrison* v. *Greaves*, 59 Miss. 445, and *State* v. *Morgan*, 80 Miss 372, 31 So. 789, are ample authority to sustain the procedure of appellants in this regard.

It is clear, I take it, that Lee M. Russell, Governor, cannot bring this action. We shall proceed to examine the matters of his representing the state as Governor, that is bringing suit in its name on his relation. So far as counsel's research has led him he has found few instances in the reported cases where the governors of the several states have sought to use the power claimed for him here. We maintain that the attorney-general of this state was the proper person to institute this proceeding, if, in his discretion as the chief law officer of the state, he saw fit to do so.

Counsel for appellees, in the trial of the cause below, raised the question. As a matter of fact, is the attorney general of the state a judicial officer? It was contended that section 144 of the constitution of Mississippi (the judicial power of the state shall be vested in a supreme court and such other courts as are provided for in this constitution), negatives the conclusion that an attorney-general is a judicial officer. Seeking the fundamental intent, why, in their wisdom, did the framers of our constitution classify the section which provides for the office of attorney-general, defines his qualifications and makes provision for his compensation, under the general heading, Judiciary. See section 173 of the constitution of the state. That section also defines the office as an elective one. He is not under the direct supervision of the governor; he performs duties separate and distinct from those which are executive in their nature. His position is radically different from that of the attorney-general of the United States. He must, under our scheme of government, come under one or the other of the three recognized heads. Certainly his duties are not legislative. Let us examine the authorities.

The definition of an attorney-general, as given in 2 R. C. L. 913, is as follows: "Defined generally, an attorney-general is the chief law officer of a state or nation, to whom is usually intrusted not only the duty of prosecuting all suits or proceedings wherein the state is concerned

but also the task of advising the chief executive, and other administrative heads of the government, in all legal matters on which they may desire his opinion." 2 R. C. L. 925.

Bouvier's Law Dictionary, vol 1, page 286, says of an attorney-general: "The office is a public trust which involves the exercise of an almost boundless discretion by an officer who ought to stand as impartial as a judge." (Citing *Com.* v. *Burrell,* 7 Pa. 39; 6 Corpus Juris 805; *People* v. *Miner,* 2 Land. (N. Y.) 397; 3 Am. & Eng. Ency. Law (2 Ed.), 479.

Fortunately an exhaustive discussion of the very point raised here was made by the late lamented Judge Calhoun in the case of *Henry* v. *State,* 87 Miss. 1, 39 So. 856, and it is upon that decision that appellants rest confident in this particular contention.

Now, this proposition must be true; if the governor had no right expressly or by necessary implication under the constitution.

To institute in the home courts a suit for the state a statute passed by the legislature empowering him to do so would be unconstitutional. It would undoubtedly supersede and override the organic law. (Judge Calhoun further in his opinion says that the legislature could not pass such a law.)

I can find no abler discussion of the law on this point than Judge Calhoun's opinion and it is with that conviction that I do not attempt a review of the dissenting opinion of the chief justice. I am convinced that the opinion of the court, concurred in by Judge Truly, is sufficient in itself to decide this cause.

*L. C. Andrews,* for appellants.

The first question to be argued is the right of the governor to institute this suit on behalf of the state of Mississippi. The government of the state of Mississippi is divisible into three separate and co-ordinate departments,

to-wit: The legislative, the executive and judicial departments, neither of which can encroach upon the rights of the other. In order to ascertain what powers are confided to each, we go to the constitution, for there they are lodged and defined.

In that instrument we find the grant of powers to each department of government enumerated and we know that those powers not expressly granted are withheld, and we know, too, that those powers not granted cannot be exercised. Article 5 of the constitution enumerates the powers granted to the executive department of government and defines the duties of the Governor. Sections 116 to 143, inclusive, contain all of them. If the power of the Governor is not granted in them to institute this suit, he has none. If the Governor was without power to bring this suit on behalf of the state, it cannot be maintained, as the state can be recognized by the court as a litigant only through agents and officers authorized to speak and act in its name. The case of *Henry Warden et al.* v. *State of Mississippi*, decided by the supreme court of Mississippi, at the November term, 1905, and reported in 87 Miss., page 4, removes any doubt upon this question.

The opinion was written by the late Judge CALHOUN. It shows a thorough knowledge and exhaustive study of the subject and the conclusions reached by that eminent judge are irresistible. In support of the principles announced in that case the court cites numerous decisions. Although it has been nearly fifteen years since this case was decided, it still stands as the law of Mississippi, the silent sentinel to point the way to the wayfaring stranger to truth and light. It settles the question as to the Governor's right to sue in the name of the state of Mississippi. That case conclusively establishes that the Governor had absolutely no right to institute this suit. It states who may do so, but denies the right to the governor, and it also declares that before the Governor can sue in the name of the state the power to do so must be granted him by the constitution. Any statute, therefore, giving such power

to him is null and void, because the constitution forbids the exercise by implication of any such power.

*Mayes & Potter,* for appellee.

Powers Generally: In addition to the powers conferred and duties imposed on the governor by the constitution and by the laws as elsewhere provided, he shall have the power and perform the duties following, viz: (n) "He may bring any proper suit affecting the general public interests, in his own name for the state of Mississippi after first requesting the proper officer so to do, and his refusal or neglect to do the same."

In addition to raising the question of the constitutionality of the above statute it is further contended by the appellants that if constitutional, sub-section "n" is not applicable to *quo warranto* suits.

We infer from reading counsel's brief, although he does not say so in so many words, that he contends that sub-section "n" of section 2372, Code of 1906 (section 4764, Hemingway's Code), violates article 1, section 1 of the constitution of the state of Mississippi, which is as follows: "The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: Those which are legislative to one, those which are judicial to another, and those which are executive to another."

In other words it is the contention of counsel, as we understand that the legislative act under consideration confers on the executive judicial functions. The appellands' entire argument with reference to the status of the attorney-general as a judicial officer is grounded on the fact that the framers of our Constitution classified the section which provides for the office of attorney-general, defines his qualifications and makes provision for his compensation, under the general heading, Judiciary. It is true that the attorney-general is an officer of the courts, but

the functions he performs are no more judicial in their character than the functions performed by the baliff of the court. It is true that the functions performed by the attorney-general require the exercise of discretion and that it is necessary for the attorney-general to be a man of ability and learning, yet, nevertheless, he is a partisan advocate for the state.

Even if the attorney-general is to be classed as a judicial officer, notwithstanding this classification the constitutional inhibitions prescribed in article 1, section 1, would not apply, because the bringing of a lawsuit is not a judicial function. If the legislature attempted to confer on the Governor judicial functions the constitution would be violated.

Our constitution provides: "That the judicial power of the state shall be vested in the supreme court and such other courts as are provided for in this constitution." And it is only the courts that have judicial power conferred on them. We set out the definition of judicial power as defined in 23 Cyc., page 1620.

Judicial Power. The authority to determine the rights of persons or property by arbitrating between adversaries in specific controversies at the instance of a party thereto; the authority vested in some court, officer, or person to hear and determine when the rights of persons or property or the propriety of doing an act is the subject-matter of adjudication; the authority or power vested in the judges or in the courts; the power belonging to or emanating from a judge as such; the power conferred upon a public officer, involving the exercise of judgment and discretion in the determination of questions or right in specific cases affecting the interest of persons or property, as distinguished from ministerial power or authority to carry out the mandates of judicial power or of the law; the power exercised by courts in hearing and determining cases before them, or some matter incidental thereto, and of which they have jurisdiction; the power to interpret the constitution and the laws and make decrees determining con-

troversies; the power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the laws. Judicial power is abstract or relative; in the latter sense it superintends and controls the conduct of other tribunals by a prohibitory or mandatory interposition. Besides the mass of judicial power belonging exclusively to courts as a department of government, there is a considerable portion of power in its nature judicial—*quasi*-judicial—invested from time to time by the legislative authority in individuals, separately or collectively, for a particular purpose and limited time."

A judicial act is defined to be an act involving the exercise of judicial power in 17 A. & E. Encyclopedia of Law (2 Ed.), page 887; Volume 6, page 1053, A. & E. Encyclopedia of Law (2 Ed.).

It will hardly be contended that the attorney-general and county attorney belong to different departments of government. Their functions in a general way are concurrent. In the case of *R. E. Sims,* 23 L. R. A. 1111, the Kansas supreme court decided that the county attorney is an executive officer, and that an attempt by the legislature to confer on him the power to fine witnesses for contempt was unconstitutional as an attempt to confer judicial powers on an executive officer. In that case the court said:

"The county attorney is peculiarly an executive officer. He is not only authorized to appear on behalf of the state, and prosecute all criminal cases arising in his county, but it is his duty to do so; and the act concerning the sale of intoxicating liquors imposes on him the specific duty of making inquiries and investigations for the purpose of detecting violations of the prohibitory law, to compel witnesses to testify, to reduce their statements in writing, to cause them to be signed by the witnesses, to file them in the district or other court having jurisdiction and with them his complaint or information charging offenders with such offenses as the testimony shows they are guilty of.

In all these proceedings the county attorney acts as an administrative officer prosecuting on behalf of the people. It is for the purpose of aiding them in performing the duties of that office. Such a combination of powers is not in accordance with the theory of our government, nor with the orderly administration of justice as administered in this country and in England. The power to punish for contempt is never exercised except by the legislative bodies or judicial officers." *Whitcomb's case,* 120 Mass. 118, 21 Am. Rep. 502; *Langenberg* v. *Decker,* 131 Ind. 471, 16 L. R. A. 108; *Kilbourn* v. *Thompson,* 103 U. S. 168, 26 L. Ed. 377; *Atty-Gen.* v. *McDonald,* 3 Wis. 805.

The judicial, is the power that expounds and applies the law. In re Appointment of Revisers of Statutes, 124 N. W. 670, 171 Wis. 592; 18 Ann. Cases, 1176; 2 Words and Phrases (2 Ed.), page 1266. Judicial power implies the construction of laws and the adjudication of legal rights. *People* v. *Appelbaum,* 95 N. E. 995, 251 Ill. 18. Judicial powers is authority vested in some court, officer, or person to hear and determine when rights of persons and property or the propriety of doing an act are the subject-matter of adjudication. *State ex rel. Hudgen* v. *Jenks,* 35 So. 60, 138 Ala. 115; *State* v. *Blansdell,* 132 N .W. 269; 22 N. D. 86; Ann. Cases 1913 E. 1089; *Rainey v. Ridgeway,* 43 So. 843; 151 Ala. 532; 2 Words and Phrases, page 1267.

The case of *Henry* v. *State,* 87 Miss. 1, 39 So. 856, relied upon by counsel for appellants does not hold that the statute conferring on the governor the authority to bring suit in the name of the state would be unconstitutional. In that case Judge CALHOUN said: "A question sleeps on the doorsill of this case of much graver importance than everything involved in the controversy. That question is whether a governor may officially or in the name of the state originate this litigation in our domestic tribunals, unauthorized by statute, without the serious disturbance and threatened destruction of the autonomy and co-equal independent rights of the three departments of govern-

ment under the constitution and laws of this republic as organized by the people in convention and in their legislature. It is essential to present the history of the proceeding and then the results of a careful examination by the rules of right reason in the light of authority."

It will be noted in the above extract from the opinion of Judge CALHOON in the case relied upon by the appellants that they stress the fact that this right to bring suit was unauthorized by the statute. The legislature of the state, however, did not seem to fear that authorizing the Governor to bring such suits would destroy the autonomy of the three separate and distinct departments of government for at the next succeeding session of the legislature sub-section "N" of section 2372, Mississippi Code of 1906, was enacted into the law, and the very reason of this act was the decision of the supreme court in the case of *Henry* v. *State, supra,* holding that the Governor did not have implied power to bring such suit. The one question decided in the Henry case was that the Governor did not have implied authority to bring suits in the name of the state. That and nothing else was decided in that case. Judge CALHOON, however, recognized the authority and power of the legislature to confer on the Governor the authority to bring suits, for Judge CALHOON there said : "No argument can be based on the evils which might result if the attorney-general refuses to proceed. If this be *a hiatus* in the law, so be it until the legislature shall see fit to act." Sub-section "N," section 2372, Mississippi Code of 1906, (Hemingway's Code, section 4764), applicable to *quo warranto* cases.

Although counsel contend that the above subsection of the code is not applicable to *quo warranto* proceedings, yet neither reason nor authority is produced to show the applicability of the statute to *quo warranto* proceedings. The statute provides that the Governor may bring any proper suit affecting the general public interests in his own name for the state of Mississippi, after first requesting the proper officer to do so and his refusal or neglect to

do same. Now, the preliminaries were complied with as the petition filed by the relator charges that both the attorney-general of the state and the district attorney of the district in which the suit was brought were requested to bring this suit by the Governor and that both these officials failed and refused to do so. The same principle here contended for by the appellee was upheld by our court in the case of *Dukat* v. *Adams,* 101 Miss. 433, 18 So. 475. In that case Judge Smith delivering the opinion of the court said:

"Counsel for appellants also contend that since section 5004, which imposes the penalty sued for, provides that it shall be recovered by an action in the name of the state at the relation of the attorney-general or district attorney. That the grant of power to sue these officials excludes any power to sue therefor in any other officials, and that, consequently the revenue agent is without authority to bring this suit. This section, however, and section 4738, are parts of the same code, were adopted at the same time, and must be construed together, and; so construed, the authority granted to the attorney-general and district attorney by section 5004, is not exclusive. To so hold would practically strip the revenue agent of all power, for in very few, if any cases, is he given the sole authority to collect or sue for money owing the state, such authority being generally also vested in other officials."

Does not interfere with the prerogatives of the attorney-general of the state and the district attorney. It may be argued that the attorney-general and the district attorney are common-law officers and that as such they have the rights belonging to such officers under the common law and that one of these rights is to bring suits in the name of the state. Now granting that this is true, the statute under consideration to bring is not only still preserved to them, but the Governor cannot proceed to bring such suits unless he has first requested the attorney-general and the district attorney to act, and these officers have refused.

HOLDEN, J., delivered the opinion of the court.

This is a *quo warranto* suit by the Governor, for the state of Mississippi, to oust appellants from the offices of mayor and commissioners of the municipality of Oxford. From a judgment of the circuit judge sustaining the Governor, this appeal is prosecuted.

It appears that the municipality of Oxford was operating under the commission form of government, with the appellants as its elected mayor and commissioners. On August 9, 1920, the appellee, Gov. Lee M. Russell, issued a proclamation demoting the city of Oxford to. a town, and appointed certain persons, other than the appellants, as officers to fill the offices of mayor and councilmen under the changed form of government, whereupon the said mayor and commissioners, appellant here, refused to surrender their offices to the appointees of the Governor. Thereupon the Governor instituted *quo warranto* proceedings, seeking to oust the appellants from office. The petition of the Governor alleges that the district attorney and the attorney-general of the state, after request, refused to file *quo warranto* proceedings against the appellants.

The appellants present several grounds for reversal, but it is unnecessary for us to notice but one, which will end the case, and that is, that the Governor is without power to institute the suit. The Constitution, which enumerates the powers of the Governor, does not authorize him to bring this character of proceeding, and he is without power to do so unless constitutionally authorized by the legislature. *Henry Warden, et al.* v. *State of Mississippi*, 87 Miss. 1, 39 So. 856. After the decision was rendered in the above case the legislature enacted section 2372, Code of 1906 (section 4764, Hemingway's Code), which provides as follows:

"*Powers Generally.*—In addition to the powers conferred and duties imposed on the Governor by the Constitution and by the laws as elsewhere provided, he shall have the powers and perform the duties following, viz.: . . . ."

"(n) He may bring any proper suit affecting the general public interests, in his own name for the state of Mississippi, after first requesting the proper officer so to do, and his refusal or neglect to do the same."

Conceding for the present, though not deciding, that the statute granting the additional power to the Governor is constitutional, we are to determine, from its language and history, the meaning and purpose of the legislature.

It will be noted that it provides "he may bring any proper suit affecting the general public interests." The question arises: Is this suit one which affects the general public interests? We think not. It seems clear to us that the makers of the statute had in mind only such suits as affected the general public interests and welfare of the whole state, as distinguished from suits affecting local or special public interests. The result of the proceeding here cannot be of statewide interest and effect, unless possibly, remotely so. No benefit or detriment to the public interests generally or wholly of the state are involved. But the outcome affects only the local public interests in and adjacent to the municipality of Oxford; and this is true even though such local public interests affected are common or general within the particular locality. *State* v. *Sayre*, 142 Ala. 641, 39 So. 240, 4 Ann. Cas. 656, is analogous in principle. Therefore the statute does not authorize the Governor to institute the proceedings, because the suit does not affect the general public interests of the state. Such suits must be brought by the officers heretofore empowered to do so.

Certainly the statute does not mean that the Governor may bring any and all of the various kinds of suits which the attorney-general and district attorney are authorized to bring. It is plain that the authority given the Governor under the statute is to go no farther than to empower him, after request, to bring suits of state-wide or general public interest, and not those local or particular in their character as is the case at bar.

The judgment of the lower court is reversed, and the cause dismissed.

*Reversed and dismissed.*

SYKES, J. (dissenting).

I am compelled to disagree with the majority opinion in this case. I think "the general public interests" of the state are here involved. The majority opinion puts entirely too narrow a construction upon the scope of this proceeding. True, it is a *quo warranto* proceeding, presenting the relative rights of two alleged sets of officers of the municipality of Oxford. Those now holding these offices assert rights under chapter 120, Laws of 1912. This chapter relates to the right of cities alone to adopt a commission form of government. When Oxford was a city it elected to come under this chapter. The appellants in this case hold their offices by virtue alone of this act.

Proceeding under the authority conferred upon him by section 3308, Code of 1906 (section 5804, Hemingway's Code), the Governor issued a proclamation, reclassifying the city of Oxford and demoting it from a city to a town. Under the emergency appointment clause of the Constitution he then appointed a mayor and board of aldermen or councilmen for the town. The question involved here is not a contest as to who really are *jure* officers of this municipality, as would be the case in a contested election where there was no question as to whether or not a municipality was a city, town, or village, but merely there a question as to who are its legally qualified officers. But in this case the further and important questions are involved as to whether or not Oxford is a city or a town, whether or not it is operating under chapter 120, Laws of 1912, as a city, whether or not under this chapter, it exercises the powers thereby conferred, and has as its mayor and board of selectmen the appellants in this case, or, on the other hand, whether or not its rights and powers as a city operating under this chapter of the Laws of 1912 have

been lost and the municipal officers provided for in this chapter have therefore been abolished, and whether by this proclamation of the Governor, Oxford is now a town operating under the municipal chapter of the Code. If the offices held by the appellants have been abolished because of the attempted demotion of this municipality, then these offices are not in existence, and these appellants are not *de facto* officers, because in fact there are no such offices with the powers and duties conferred under the above chapter of the Laws of 1912, provided for in the municipal chapter of the Code. If the Governor had the right to demote Oxford and reclassify it as a town then these appellants are not even *de facto* officers, but are mere usurpers. The appellants are not claiming to hold offices or exercise any powers except those conferred upon them by chapter 120, Laws of 1912, under which chapter Oxford was operating when a city. If Oxford is still a city, of course, appellants would still be rightfully in office and be the *de jure* officers of the city. On the other hand, in my opinion, if the Governor had the power to demote the city to a town, then the offices held by the appellants have been abolished, and the Governor had the right to appoint officers for this town. In other words, the real question involved in this case is whether or not the Governor had the power, under section 3308, Code of 1906, to demote this municipality and appoint other municipal officers. To my mind this question is one which affects the general public interests. A municipality is but a creature of the state, deriving its powers from the state through general laws passed by the legislature. The state has the right to grant and to take away its charter. Our statutes provide by general laws for the creation and abolition of municipalities. Public duties are required of municipal corporations as a part of the machinery of state government, and in order that these duties may be properly performed they are invested with the necessary power to properly do so. And they are subject to the will of the legislature, unless restrained by the Constitution. *Board* v. *Board,* 30 W.

Va. 424, 4 S. E. 640; *Doon Tp.* v. *Cummins,* 142 U. S. 366, 12 Sup. Ct. 222, 35 L. Ed. 1044. The administration of justice and the preservation of the public peace within these municipalities are matters which concern the state at large, although these powers are exercised within defined limits. *Chivago* v. *Wright,* 69 Ill. 326; *Britton.* v. *Steber,* 62 Mo. 370; *People* v. *Lynch,* 51 Cal. 15, 21 Am. Rep. 677; *People* v. *Detroit,* 28 Mich. 228, 15 Am. Rep. 202; *Andrews* v. *Pipe Works,* 61 Fed. 782, 10 C. C. A. 60.

Municipal corporations have a dual character, the one governmental, legislative, or public; the other, proprietary or private. In their public capacity they are merely a part of the machinery of state government, and the authority of the state is, of course, supreme. *Bailey* v. *New York,* 3 Hill (N. Y.) 531, 38 Am. Dec. 669.

A municipal corporation, in exercising its governmental or public duties, is a representative of the state, and is a portion of the state's governmental power. It is a creature of the state, made for the specific purpose of exercising within a limited sphere the powers of the state. *Philadelphia* v. *Fox,* 64 Pa. 180; *United States* v. *Railway Co.,* 17 Wall. 329, 21 L. Ed. 597; *Daniel* v. *Memphis,* 11 Humph. (Tenn.) 582.

"Municipal corporations are mere governing bodies having charge of and jurisdiction over particular political subdivisions of the state." Words and Phrases, Second Series, vol. 3, p. 472, citing *Uvalde Asphalt Paving Co.* v. *City of New York,* 149 App. Div. 491, 134 N. Y. Supp. 50.

Municipal corporations are the auxiliaries, or the convenient instrumentalities, of the general government of the state for the purpose of municipal rule. Words and Phrases, Second Series, vol 3, p. 473.

"Municipal corporations are but public agencies, with limited rights and powers." Same authority, page 473. See, also, authorities on page 474.

"A municipal corporation is a subordinate subdivision of the state government. It derives its existence, powers,

and privileges from the state." *State* v. *City of Aberdeen*, 74 Pac. 1022, 34 Wash. 61.

"Municipal corporations constitute a part of the civil government of the state, and their streets are highways." *Telephone Co.* v. *Mobile* (C. C.) 162 Fed. 523.

"A municipal corporation is a subordinate branch of the domestic government of the state." *State* v. *Butler*, 178 Mo. 272, 77 S. W. 560; *Nashville* v. *Ray*, 19 Wall. 468, 22 L. Ed. 164.

Dr. Dillon in his work on Municipal Corporation, vol. 1 (5th Ed.), section 31, p. 58, says in part:

"Municipal corporations as they exist in this country are bodies politic and corporate of the general character above described, established by law partly as an agency of the state to assist in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district which is incorporated."

By statute the mayor within the municipality is *ex officio* a justice of the peace, and the marshal, a constable, the police powers of the state as well as of the municipality; and the preservation of peace and good order both for the state and a municipality is exercised by these officers. These are matters of general interest to the entire state. But the question itself as to whether or not a municipality is a city or a town, and whether or not it is operating under the municipal chapter of the Code, is a matter of general interest to the state. The question of whether or not the appellants in this case are the *de jure* officers of the city of Oxford, or whether or not they are mere usurpers, holding no office and exercising no powers, is a matter of general concern to the state at large. The state as the creator, is interested in knowing whether its agent, the municipality, is a town or village, and whether or not it is exercising powers under chapter 120, Laws of 1912, or powers under the municipal chapter of the Code. A municipality, of course, only acts through its officers and agents. Its public and proprietary or private

powers are only thus exercised. It is a matter of general public interest to the state to know who are the properly qualified officers of this municipality to enforce peace for the public safety and welfare of that community. The offices claimed by the appellants either exist or do not exist. In no sense of the word are they *de facto* officers. If they are claiming to exercise powers by virtue of offices which do not exist, their acts would be void. It is a matter of general public interest to the state to have the powers vested in this municipal legally exercised by its officers.

It is unnecessary for me to discuss any other question presented in this appeal, because the majority has seen fit to rest its opinion upon this one question. As above stated, I think this is entirely too narrow a view to take of this controversy and from the conclusion of the majority I am compelled to dissent.

W. H. COOK, J., concurs in these views.