[No. 34724.   Department Two.   October 1, 1959.]

ANTONIO FAZIO, *Appellant*, v. JURIS EGLITIS, *Respondent*.[1]

[1]Reported in 344 P. (2d) 521.

*Edwin R. Johnson,* for appellant.

*Carnahan, Gordon & Goodwin,* for respondent.

WEAVER, C. J.—Plaintiff appeals from a judgment of dismissal entered after the court sustained defendant's challenge to the sufficiency of plaintiff's evidence.

We are required to interpret the evidence, and all inferences that can reasonably be drawn therefrom, in the light most favorable to plaintiff. *Fink v. Dixon,* 46 Wn. (2d) 794, 285 P. (2d) 557 (1955), and cases cited.

This is an action for damages resulting from an automobile collision that occurred at the intersection of South 21st and Canal streets in Tacoma, between ten and eleven p. m.

South 21st street extends from east to west; Canal street, an arterial, extends from north to south. From a large-scale drawing introduced in evidence, the following appears: South 21st street is thirty feet wide; commencing at points fifty feet east of the east curb line of Canal street, as extended across the intersection, the north and south lines of South 21st street fan north and south so that, at the junction of the two streets, South 21st street is approximately one hundred and thirty feet wide; a stop sign on the north

side of South 21st street is located approximately fifty feet east of the east curb line of Canal street.

At a point one hundred and fifty feet south of the intersection with South 21st street, Canal street becomes an elevated viaduct; the incline curves from south to southwest.

Plaintiff, driving west on 21st street, stopped his car approximately ten feet west of the stop sign, where he had an unobstructed view of the intersection and the top of the Canal street viaduct. He intended to make a left turn. Plaintiff looked to the left and saw the lights of defendant's car at the top of the viaduct incline, approximately four hundred and eighty feet from the intersection. He looked to the right, saw no traffic, and proceeded into the intersection.

At the moment defendant saw plaintiff's car, he applied the brakes and attempted to stop; he was unsuccessful Skid marks made by defendant's car were found to measure one hundred and ten feet to the point of impact.

Plaintiff testified that when the cars were about one hundred and fifty feet apart

". . . I had sensed this car—coming at a high speed, when I tromped on my throttle and attempted to get off the road as quickly as possible without trying to make a left turn . . .

". . .

"All I could hear was brakes squealing on the roadway."

The front of plaintiff's car had crossed the centerline when defendant's car struck the left rear fender and came to a stop forty or fifty feet from the point of impact. Plaintiff testified that defendant's speed was "at least sixty miles an hour," although he had no means of estimating the speed of defendant's car when he first saw it at the top of the viaduct incline. The speed limit on the bridge is thirty miles per hour; on Canal street, it is twenty-five miles per hour.

The trial court held that plaintiff was chargeable with contributory negligence, as a matter of law, because (a) he failed to yield the right of way, and (b) he violated an ordinance of the city of Tacoma when he stopped approxi-

mately thirty to forty feet, instead of fifteen, from the curb line of the arterial street.

Plaintiff (appellant) contends (a) that he is entitled to have the jury pass on the question of whether he was deceived by defendant's speed; and (b) that the Tacoma ordinance is in conflict with the state motor vehicle code.

It is apparent that plaintiff was the disfavored driver, for he was entering an arterial highway.

The statute requires that

"The operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial public highway, and having stopped shall look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection: . . ." RCW 46.60.170

In *Martin v. Hadenfeldt*, 157 Wash. 563, 567, 289 Pac. 533 (1930), this court interpreted a similar statute. The court said:

"If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4) The driver on the left [the disfavored driver] assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

When will an issue, under "rule four" of the *Hadenfeldt* case, become a question of law for the court to decide?

This question was answered in *Gavin v. Everton*, 19 Wn. (2d) 785, 789, 144 P. (2d) 735 (1944):

". . . *We have no other rule than that it is a question of law only when it can be said that reasonable minds could not differ on the issue.* The particular facts in each case must control that question. This must necessarily be so, since, if we say that it is always a question of law to determine when the disfavored driver falls under rule four, it would be tantamount to striking the function of the jury completely out of rule four. On the other hand, if we say

that an issue under rule four is always and invariably a question for the jury, it would be the equivalent of saying that facts could not exist so extreme in nature that it could be said, as a matter of law, that all reasonable minds must agree. Neither of these positions is sound. See *Billingsley v. Rovig-Temple Co.*, 16 Wn. (2d) 202, 133 P. (2d) 265." (Italics ours.)

In *Pasero v. Tacoma Transit Co.*, 35 Wn. (2d) 97, 211 P. (2d) 160 (1949), this court held that a disfavored driver is entitled to have an instruction given if the trial court can determine from the evidence that reasonable minds might differ as to whether the disfavored driver was deceived.

A disfavored driver has the right to assume that a favored driver, on an arterial highway, will not travel in excess of the legal rate of speed, unless, of course, the disfavored driver knows, or should know, that the favored driver is approaching at an excessive rate of speed. *Peerless Food Products Co. v. Barrows*, 49 Wn. (2d) 879, 307 P. (2d) 882 (1957), and cases cited; *Pyle v. Wilbert*, 2 Wn. (2d) 429, 98 P. (2d) 664 (1940), and cases cited. Deception presupposes a situation where the disfavored driver sees the favored vehicle and has the opportunity to make a choice. *Hauswirth v. Pom-Arleau*, 11 Wn. (2d) 354, 119 P. (2d) 674 (1941).

Under the plaintiff's evidence, the jury would be entitled to find (a) that before entering the intersection the plaintiff stopped at a point where he could observe traffic at the intersection and on the arterial highway; (b) that he saw defendant four hundred and eighty feet away—a distance (equal to more than one and one half average city blocks) which, at the legal rate of speed, would require more than thirteen seconds to traverse (if our arithmetic is correct); (c) that defendant was traveling at an illegal speed, as indicated by one hundred and ten feet of skid marks made by his car; and (d) that there was nothing to indicate to plaintiff (the disfavored driver) that defendant (the favored driver) was not traveling within the legal speed limit.

■ This evidence is sufficient to take

" . . . to the jury the question of fact as to whether or no the favored driver . . . so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver . . . and warrant him in going forward upon the assumption that he had the right to proceed." *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930).

■ We conclude, therefore, that plaintiff is entitled to a new trial.

On a retrial, the court's second reason for sustaining a challenge to the sufficiency of plaintiff's evidence—that the plaintiff violated an ordinance of the city of Tacoma—will become an issue.

The ordinance in question provides:

"It shall be unlawful for any person when driving or operating a vehicle to enter upon or cross over any of the arterial highways listed in Section 11.34.130 without first bringing the vehicle which he is driving or operating to a complete stop immediately before entering upon or crossing over such arterial highway, *such stop to be made within fifteen feet of the curb lines of such arterial highway.*" Code, City of Tacoma 11.34.110. (Italics ours.)

It is undisputed that plaintiff did not stop within fifteen feet of the curb line of Canal street.

RCW 46.60.150 defines right of way on approaching an *uncontrolled* intersection. It provides:

"Every operator of a vehicle on approaching public highway intersections shall *look out* for and give right of way to vehicles on his right, . . ." (Italics ours.)

RCW 46.60.170 defines right of way at *arterial* intersections. It requires that

"The operator of a vehicle shall stop as required by law *at the entrance* to any intersection with an arterial public highway, . . ." (Italics ours.)

One who approaches an arterial highway is required to stop and look from a position where he can see approaching traffic. It is not sufficient to merely stop at the stop sign because

". . . the law compels one who enters an arterial highway to stop and look from a position where he can see approaching traffic along the arterial highway." *Angelo v. Lawson*, 26 Wn. (2d) 198, 201, 173 P. (2d) 124 (1946), and cases cited.

There is, necessarily, a close relationship between RCW 46.60.150 (uncontrolled intersection) and RCW 46.60.170 (arterial intersection). For the sake of uniformity, it is desirable to have the same rules of construction and application apply to both statutes in so far as the facts will permit or justify.

In *Fetterman v. Levitch*, 7 Wn. (2d) 431, 437, 109 P. (2d) 1064 (1941), this court construed Rem. Rev. Stat., Vol. 7A, § 6360-88, which, for our purpose, is the same as RCW 46.60.150 (uncontrolled intersection). Therein we said:

"Although, literally, the curb lines, extended, mark the boundaries of an intersection, and although, from a literal standpoint, an automobile *enters* an intersection when it crosses the curb line, this court has never said, dogmatically, that 'one entering an intersection' must look to his right immediately *at the curb line;* nor has it ever attempted to prescribe a rule fixing the exact number of feet from the curb line within which the driver on the left [disfavored driver] must look. In the very nature of things, no such rule can, or should, be promulgated, for the simple reason that conditions differ with every intersection and with every instance in which a driver endeavors to cross an intersection."

In *Hauswirth v. Pom-Arleau*, 11 Wn. (2d) 354, 372, 119 P. (2d) 674 (1941), the accident occurred at the intersection of an arterial and a nonarterial street. The court said:

"We have had occasion to construe the provisions of the above statute [arterial intersection], and also like provisions of similar statutes [uncontrolled intersection], and have consistently held that, in situations of the kind here involved, the person upon whom rests the duty of stopping and looking out for vehicles having the right of way *must look, or stop and look,* from a position where he can see

approaching traffic from either direction. [Citing authorities.]" (Italics ours.)

■ RCW 46.08.020 states that the provisions of the motor vehicle code shall be applicable and uniform throughout the state. Although a city may adopt additional vehicle and traffic regulations (see *Kimmel v. Spokane*, 7 Wn. (2d) 372, 109 P. (2d) 1069 (1941)) not in conflict with the motor vehicle code, an ordinance that does conflict with the code is "declared to be invalid and of no effect."

■ We conclude that the Tacoma ordinance in question, which requires a vehicle approaching an arterial highway to stop within an arbitrary distance of the curb line of the arterial, is in conflict with RCW 46.60.170, as that statute has been interpreted by this court.

The wisdom of the court's observation in the *Fetterman* case, *supra*, that

". . . The maximum distance from the curb line at which the required observation may be made necessarily depends upon the surrounding conditions and circumstances." (p. 437)

is illustrated and fortified when we consider the deltaic character of South 21st street as it meets Canal street.

In the circumstances of this case, had plaintiff stopped within fifteen feet of the curb line of Canal street, he could have been a "sitting duck" for south bound traffic on Canal street that intended to turn east on South 21st.

It was error for the trial court to charge plaintiff with contributory negligence for not having stopped "within fifteen feet of the curb line of such arterial highway."

The judgment of dismissal is reversed, and the case remanded for a new trial.

It is so ordered.

FOSTER and HUNTER, JJ., concur.

HILL and DONWORTH, JJ., concur in the granting of a new trial.