908 P.2d 359 (1995)
128 Wash.2d 341
The CITY OF SEATTLE, Petitioner,
v.
George Frederick WILLIAMS, Respondent.
No. 62065-2.
Supreme Court of Washington, En Banc.
December 21, 1995.
Mark Sidran, Seattle City Attorney and Ms. Jeanne Innis, Asst. City Atty., for petitioner.
Robert V. Goldsmith, Seattle, for respondent.
ALEXANDER, Justice.
The question presented by this appeal is whether the City of Seattle may enforce an ordinance that defines the offense of driving while intoxicated in a manner that is not in uniformity with a state statute defining the *360 offense of driving under the influence of intoxicating liquor. We hold that it may not, because to allow it to do so would contravene RCW 46.08.020, a statute which requires traffic laws to be "applicable and uniform throughout this state," as well as RCW 46.08.030, a statute which requires traffic laws to be "applicable and uniform upon all persons operating vehicles upon the public highways of this state." We, therefore, affirm the Seattle Municipal Court's order dismissing a citation charging George Frederick Williams with violating Seattle Municipal Code 11.56.020(A)(1)(a).
A brief recitation of the facts is necessary to put this case in context. At 1:45 a.m., on December 18, 1993, Seattle Police Officer D.L. Bauer observed an automobile weaving in traffic in downtown Seattle. After stopping the vehicle, Bauer discovered that George Frederick Williams was its driver and sole occupant. Bauer smelled a strong odor of alcohol emanating from Williams's breath. He also observed that Williams's face was flushed, his eyes were bloodshot and watery, and his pupils were dilated. Consequently, Officer Bauer asked Williams to perform some field sobriety tests. The manner in which Williams performed these tests caused Bauer to conclude that Williams was impaired due to the consumption of alcohol. Bauer then took Williams into custody and delivered him to Seattle Police Precinct Station Number One where Williams was given a breath alcohol concentration test on a breath analysis machine known as the BAC Verifier DataMaster. Williams registered a reading on that machine of 0.10 at 2:35 a.m. and 0.09 three minutes later. Bauer issued a numbered Seattle Municipal Court citation to Williams, charging him with violating Seattle Municipal Code (SMC) section "11.56.020(A)(1)(A)(C) [sic] DUI (Breath Test)."[1]
At the time Williams was arrested, the City of Seattle Municipal Code defined the offense of Driving While Intoxicated (DWI) in pertinent part, as follows:
A. Driving While Intoxicated
1. A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within the City:
a. and the person has 0.08 grams or more of alcohol per two hundred ten (210) liters of breath within two (2) hours after driving, as shown by analysis of the person's breath made under the provisions of this section; or
. . . . .
c. while the person is under the influence of or affected by intoxicating liquor or any drug....
Seattle Municipal Code 11.56.020(A)(1) (as amended on Sept. 30, 1993, by Ordinance 116880 § 1, effective Oct. 30, 1993) (emphasis added). At all times relevant to this case, the aforementioned ordinance was identical, in all material respects, to a state statute defining the offense of Driving Under the Influence (DUI), except that the Seattle ordinance made it an offense to have a concentration of 0.08 grams of alcohol per a quantity of breath within two hours of driving a vehicle, whereas the statute made it unlawful to have a concentration of 0.10 grams of alcohol per the same quantity of breath within two hours of driving.[2]
Williams moved in Seattle Municipal Court to dismiss the DWI charge. At about that time, eight other defendants who had also been charged in Seattle Municipal Court with violating SMC 11.56.020(A)(1)(a) sought dismissal of the charges against them. Their motions were consolidated with Williams's motion. Argument was then held before a panel of eight municipal court judges. In a Memorandum Opinion issued following argument,[3] these judges summarized the issue *361 before them as follows: "[D]oes the difference in breath standards between [SMC] 11.56.020 and [RCW] 46.61.502, the state statute defining driving while intoxicated, violate Const. Art[.] XI, sec. 11?" Mem.Op. at 4.
The municipal court judges unanimously answered this question in the affirmative, concluding that a portion of the challenged ordinance, SMC 11.56.020(A)(1)(a), violated Const. Art. XI, sec. 11,[4] in that it conflicted with state law. Their decision effectively precluded the City from establishing that any of the defendants had violated SMC 11.56.020 on the basis of a breath analysis reading of between 0.08 and 0.10. The judges indicated, however, that the City could proceed with the prosecution of any of the defendants whose breath analysis reading exceeded 0.10,[5] or whose driving was affected by the consumption of intoxicating liquor, regardless of the Defendant's breath test result.[6] The municipal court judge assigned to hear City of Seattle v. Williams, No. 180263 (Seattle Mun.Ct., Dec. 18, 1993) subsequently found, based on the facts of that case, "that the City is effectively precluded from proceeding," and dismissed the case with prejudice. Report of Proceedings at 54.
In concluding that Seattle's ordinance was in conflict with state law, and was thus unconstitutional, the municipal court judges adopted what they observed was the analysis of other courts in cases where ordinances were alleged to be in conflict with state statutes. (Citing Republic v. Brown, 97 Wash.2d 915, 652 P.2d 955 (1982); Fazio v. Eglitis, 54 Wash.2d 699, 344 P.2d 521 (1959); and Seattle v. Wandler, 60 Wash.App. 309, 803 P.2d 833 (1991), rev'd on other grounds, 119 Wash.2d 623, 836 P.2d 212 (1992)). The municipal court judges concluded that "in dealing with a challenge to a municipal traffic ordinance that varies from state law," those courts had "applied a much stricter standard [to challenges to traffic ordinances] than is applied in dealing with a challenge to a non-traffic law." Mem.Op. at 11. Applying this more rigorous standard in examining the differences between Seattle's ordinance and the corresponding state statute, the judges concluded that the difference between the 0.08 standard in the City DWI ordinance and the 0.10 standard in the State DUI statute is significant and "compels the conclusion that SMC 11.56.020(A)(1)(a) impermissibly conflict[s] with state law and must be struck down." Mem.Op. at 12. In doing so, the judges set forth the following public policy consideration as favoring their conclusion: "Certainly, a patchwork quilt of differing traffic regulations can present significant problems for a motorist in an area such as King County, with its multiple and overlapping municipal, county and state jurisdictional boundaries." Mem.Op. at 11-12.
The City appealed the municipal court decision dismissing the charge against Williams to the King County Superior Court. It claimed there that the municipal court erred in holding that "SMC 11.56.020(A)(1)(a) impermissibly conflicts with state law" and in dismissing the charge against Williams. Notice of Appeal ¶ 2. The City also moved to transfer the appeal to the Supreme Court. We granted the motion, reasoning that the case "presents a significant issue which requires prompt and ultimate determination."[7] Order granting mot. ¶ 2.

*362 I
In conducting our review of the municipal court's decision, this court is bound by neither the municipal court's conclusion regarding the level of scrutiny to which traffic ordinances must be subjected, nor its conclusion that the traffic ordinance in question unconstitutionally conflicts with state law. De novo review is appropriate where, as here, the issue is solely a question of law. State v. McCormack, 117 Wash.2d 141, 143, 812 P.2d 483 (1991).
We are also mindful of the well-established policy that if, in order to resolve an issue before us, it is not necessary to reach a constitutional question, an appellate court should decline to do so. State v. Speaks, 119 Wash.2d 204, 207, 829 P.2d 1096 (1992). Accord State v. Hall, 95 Wash.2d 536, 539, 627 P.2d 101 (1981) ("A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case."). See also Anderson v. Seattle, 123 Wash.2d 847, 853, 873 P.2d 489 (1994) ("This court need not decide constitutional issues if non-constitutional grounds dispose of the case.") (citing In re Myers, 105 Wash.2d 257, 268, 714 P.2d 303 (1986)). This principle compels this court to construe the pertinent statutes in this case because the challenged Seattle ordinance arguably violates a uniformity requirement found in two statutes, even if we were to agree with the dissenters that the ordinances do not conflict, in a constitutional sense, with RCW 46.61.502, the statute making it an offense to drive a motor vehicle while under the influence of intoxicating liquor.

II
With the aforementioned principles in mind, we turn the central issue raised by Williams: "In the face of the State Legislature's express statement as of the need for uniformity in traffic laws, how can cities be permitted to set up a patchwork of differing standards?" Br. of Resp't at 3.[8] Stated more precisely, the question before us is whether Seattle Municipal Code 11.56.020(A)(1)(a) violates two general statutes requiring uniformity of traffic laws: RCW 46.08.020 and .030. This is a significant question because the challenged ordinance purports to make it unlawful for a person to operate a motor vehicle in the City of Seattle with an amount of alcohol in one's system that is significantly less than the alcohol concentration level for drivers that is proscribed by statute. For that reason, which we elaborate upon below, we conclude that the ordinance violates the statutory uniformity requirement, and is, therefore, invalid and of no effect.
RCW 46.08.020 provides as follows:
The provisions of this title [Title 46 Motor Vehicles] relating to vehicles shall be applicable and uniform throughout this state and in all incorporated cities and towns and all political subdivisions therein and no local authority shall enact or enforce any law, ordinance, rule or regulation in conflict with the provisions of this title except and unless expressly authorized by law to do so and any laws, ordinances, rules or regulations in conflict with the provisions of this title are hereby declared to be invalid and of no effect. Local authorities may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions of this title.
RCW 46.08.020 (emphasis added) (recodified in 1961 from RRS § 6360-2).
RCW 46.08.030 provides, as follows: "The provisions of this title relating to the operation of vehicles shall be applicable and uniform upon all persons operating vehicles upon the public highways of this state, except as otherwise specifically provided." RCW 46.08.030 (emphasis added).
In resolving the central question that we have identified above, it is necessary for us to discern what the Legislature intended when it enacted the two statutes we have set *363 out in full above, statutes that require traffic laws to be applicable and uniform throughout the state. In that effort we must first look to the plain meaning of the words used in the statute. State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990). In that regard, we are duty-bound to give meaning to every word that the Legislature chose to include in a statute and to avoid rendering any language superfluous. Wright v. Engum, 124 Wash.2d 343, 352, 878 P.2d 1198 (1994) ("We do not interpret statutes so as to render any language superfluous.") (citing Yakima County (West Valley) Fire Protection Dist. 12 v. Yakima, 122 Wash.2d 371, 858 P.2d 245 (1993)). See also Seattle v. McCready, 123 Wash.2d 260, 280, 868 P.2d 134 (1994) (stating that it is "the settled practice of construing statutes to avoid superfluous language"). Where a statute does not define a nontechnical, but vitally important word, we may look to the dictionary for guidance. State v. Pacheco, 125 Wash.2d 150, 154, 882 P.2d 183 (1994).
RCW 46.08.020 and .030 provide, respectively, that provisions of the title on Motor Vehicles "shall be applicable and uniform throughout this state" and "shall be applicable and uniform upon all persons operating vehicles upon the public highways of this state," unless otherwise specifically provided.[9] In our judgment, the key word that is present in both of these statutes is "uniform," a word that is not defined anywhere in Title 46.[10] The dictionary, however, is helpful in divining its meaning. It defines "uniform," in the sense that is relevant here, as "marked by lack of variation, diversity, change in form, manner, worth, or degree," and as "marked by complete conformity to a rule or pattern or by similarity in salient detail or practice." Webster's Third New International Dictionary 2498 (3d ed.1986).
Lacking guidance from any other source, we are inclined to employ the dictionary definition of "uniform" as an aid in interpreting the meanings of RCW 46.08.020 and RCW 46.08.030. That leads us to the reasonable and unremarkable conclusion that statutory provisions relating to vehicles and their operation must "lack variation" throughout the state. More to the point, we believe that by this language, the Legislature intended that acts prohibited by statutes within Title 46, the Motor Vehicle Code,[11] should be uniformly proscribed throughout the state, including within "all incorporated cities and towns."[12] RCW 46.08.020 (emphasis *364 added); see State v. Aberdeen, 34 Wash. 61, 68, 74 P. 1022 (1904) ("A city is only a political subdivision of the state....") (quoting New Orleans v. Clark, 95 U.S. 644, 24 L.Ed. 521 (1877)). It did not, in our judgment, intend to create a system that would cause a given act relating to the operation of a motor vehicle to be proscribed in one part of the state and not in another.
With this understanding of RCW 46.08.020 and .030 in mind, we next consider whether the challenged ordinance disrupts the uniform application, statewide, of the statutory proscription against driving while under the influence of intoxicating liquor. Consistent with what we have just stated, it follows that when a local jurisdiction departs from the statutorily defined elements for driving while under the influence of intoxicating liquor, the local ordinance effectively supersedes the applicability of the statutory provision within that jurisdiction's boundaries. This necessarily interferes with the uniform application of the statutory provision throughout the state. As a corollary, the offense as defined by the local jurisdiction's ordinance is also not uniformly applied throughout the state because that ordinance is applied only within the jurisdiction's boundaries and not beyond its geographic limits. Thus, the City's enforcement of a standard for operating a vehicle while intoxicated that varies in salient detail from the definition of driving under the influence of intoxicating liquor found in RCW 46.61.502 significantly undermines the uniformity requirement of both RCW 46.08.020 and RCW 46.08.030.
The mischief caused by such a nonuniform application of traffic laws is evident when viewed from the perspective of a driver passing from a location where the state statute holds sway to a jurisdiction that has an ordinance which is at variance with the statute. In his brief to this court, Williams describes a hypothetical driver traveling only twenty miles east from Seattle on Interstate 90 who is confronted with potentially different DUI standards in each of five different jurisdictions. This scenario is not overstated. Indeed, if the statutory requirement relating to uniformity of traffic laws is not respected by this court, jurisdictions would be free to establish standards varying in even greater degree from the statutorily established 0.10 grams of alcohol per 210 liters of breath than does the Seattle ordinance at issue here. One can easily imagine the problems that such balkanization of our traffic laws would cause motorists who traverse the thirty-eight distinct political jurisdictions that Interstate 5 crosses as it wends its way through our state, let alone the countless political subdivisions created by state highways and other thoroughfares intersecting throughout the state.
The City urges this court to ignore altogether the uniformity requirement of RCW 46.08.020 and .030, asserting that the challenged ordinance should be subjected only to the test for determining when an ordinance conflicts, in a constitutional sense, with state law. It correctly observes that the "classic" test for constitutional conflict was initially stated in Bellingham v. Schampera, 57 Wash.2d 106, 111, 356 P.2d 292 (1960). In that case, this Court addressed the validity of a municipal ordinance, which was identical in every relevant provision to the then-existing statute prohibiting driving while intoxicated. The Court announced the rule, as follows:
"`"In determining whether an ordinance is in `conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." Village of Struthers v. Sokol, 108 Ohio St. 263, 140 N.E. 519 [(1923) ]. Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits[.]' State v. Carran, 133 Ohio St. 50, 11 N.E.2d 245, 246 [1937]. * * * Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail.' Fox v. City of Racine, 225 Wis. 542, [546-47], 275 N.W. 513, 515 [ (1937) ]."
Schampera, 57 Wash.2d at 111, 356 P.2d 292 (additional citations omitted).
In essence, the City contends that the statute prohibiting driving while intoxicated does not expressly permit driving with a breath alcohol concentration of less than 0.10, it merely requires that influence of the intoxicating liquor must be proved by means other *365 than a "per se" BAC standard. Consequently, it argues, that the ordinance does not forbid an act that a statute expressly permits, and thus does not conflict, in a constitutional sense, with the corresponding statute addressing the same subject.
As stated above, it is not necessary for us to decide this case on constitutional grounds because the statutory uniformity requirement is sufficient to resolve it. Indeed, even if we were to hold that article XI, section 11 of the state constitution is not violated by the challenged ordinance, we would still need to address the uniformity provision to completely decide the case. Rather, we concur with the view of the municipal court judges who stated that "it must be presumed that, by enacting RCW 46.08.030, the legislature was intending to do more than simply restate the provisions of Const. Art. XI, sec. 11." Mem.Op. at 6. If we were to adopt the City's argument, we would be rendering much of RCW 46.08.020 and .030 superfluous, a result we cannot countenance.
By holding that the challenged ordinance violates the statutory uniformity requirement, we are not saying that a municipality may never enact traffic laws for which there is a statutory provision on the same subject.[13] Quite the contrary, although we reach the result Williams urges, we reject his contention that the uniformity requirements of RCW 46.080.020 and .030 indicate an "implicit preemption" of traffic laws, including the provisions prohibiting driving while under the influence of intoxicating liquor. Br. of Resp't at 12-14. We disagree because this court has previously addressed precisely the question of whether state statutes were intended to preempt the field of regulating driving under the influence of alcohol. Schampera, 57 Wash.2d at 108-12, 356 P.2d 292. The Schampera court formulated the relevant question in the following terms:
[Whether the] state of Washington by RCW 46.56.010 [the statute which then made it]
"... unlawful for any person who is under the influence of or affected by the use of intoxicating liquor ... to drive or be in actual physical control of any vehicle upon the public highways."
has precluded Bellingham, or any other city in Washington, from passing ordinances directed against the same offense.
Schampera, 57 Wash.2d at 107-08, 356 P.2d 292. The court answered the question by stating that "there is no indication that the legislature intended to pre-empt [this] field of legislation,"[14] concluding that the city's ordinance, and the state statute, which were materially identical, operated concurrently. Schampera, 57 Wash.2d at 110-12, 356 P.2d 292. Thus, a city is free to enact and enforce ordinances relating to the regulation of the operation of vehicles on public highways, as long as the ordinance does not interfere with the statutory uniformity requirement.
*366 In addition, we observe that exceptions to the general uniformity rule are permitted by statute. In that regard, RCW 46.08.020 provides that local authorities may enact traffic ordinances, even when they conflict with the provisions of the Motor Vehicles title, when "expressly authorized by law to do so." Similarly, RCW 46.08.030 also allows for an exception to the uniformity of laws relating to the operation of vehicles when such departure from the norm is "otherwise specifically provided."
Significantly, the Legislature has not provided any statutory exceptions in the arena of the elements of driving while intoxicated. We note, however, that the Legislature has demonstrated its ability to indicate when the uniformity rule should not apply. For example, RCW 46.61.415 specifically provides that local authorities may establish a maximum speed limit different from the speed permitted by RCW 46.61.400 or RCW 46.61.440. In addition, RCW 46.61.5191 and RCW 35.21.165 specifically permit local jurisdictions to enact greater penalties than those provided in statute for, respectively, a violation of RCW 46.61.519 (prohibiting an open container of an alcoholic beverage when traveling upon a highway), and RCW 46.61.502 (prohibiting driving while under the influence of intoxicating liquor). These examples suggest that the Legislature, if it desires to do so, can carve out exceptions to the uniformity requirement. Clearly, it could have exercised that discretion with respect to the elements of the offense at issue here if it had been so inclined. With regard to the BAC standard by which the offense of driving while under the influence of intoxicating liquors is established, the Legislature has not provided any exceptions to the uniformity requirement, and, therefore, none can be permitted by this court.

III
In sum, we agree with the municipal court judges' observation that to interpret these statutes as the City does would allow the creation of a crazy quilt, composed of differing DUI prohibitions. Such a circumstance flies in the face of the "uniformity" requirement of RCW 46.08.020 and RCW 46.08.030, and would reduce these statutes to a mere restatement of the constitutional provision barring local authorities from enacting ordinances that "conflict" with state law. Mem.Op. at 6. We cannot sanction such an interpretation because it would render the statutes superfluous or insignificant. We therefore affirm the municipal court and hold, as it did, that the uniformity language of RCW 46.08.020 and RCW 46.08.030 precludes the City of Seattle from enforcing SMC 11.56.020(A)(1)(a).
Affirmed.
DURHAM, C.J., GUY, JOHNSON and MADSEN, JJ., and UTTER, J. Pro Tem., concur.
TALMADGE, Justice (dissenting).
I dissent. The City of Seattle, a charter municipal corporation, enacted a driving under the influence (DUI) ordinance that is identical to state statute in each respect except that Seattle established a per se DUI crime at .08 grams or more of alcohol per 210 liters of breath, while the State sets the per se crime at .10 grams. The majority apparently concedes that Seattle's ordinance does not violate WASH. CONST. art. XI, § 11. Moreover, the Legislature has expressly declined to preempt local DUI ordinances that are more stringent than the state statute. Yet, without any authority, the majority holds that RCW 46.08.020 and RCW 46.08.030, which provide that traffic laws should be uniform throughout the state, require a more stringent standard of uniformity for traffic laws than is required under art. XI, § 11. By judicial fiat, the majority preempts all local traffic and DUI ordinances that are not identical to state statute despite the legislative decision not to preempt more stringent local DUI ordinances.
Seattle's DUI ordinance is not preempted by state law and is consistent with state efforts to proscribe drinking and driving. Because the majority so far departs from the traditional analysis regarding the exercise of police powers by local governments, I am compelled to dissent.

*367 FACTS
At 1:45 a.m. on December 18, 1993, a Seattle police officer observed defendant Williams' car straddling the lane markings and weaving on Elliott Avenue West in Seattle. After Williams was stopped, the officer smelled "a strong odor of alcohol coming from [Williams'] breath" and observed that Williams' eyes were bloodshot and watery, and his pupils were dilated. The officer had Williams perform field sobriety tests and gave him a breath test, which registered readings of .10 at 2:35 a.m. and .09 at 2:38 a.m. Williams was cited for DUI under the Seattle ordinance.
Williams was one of nine people charged with violating the Seattle DUI ordinance who challenged the constitutionality of that ordinance. The nine cases were consolidated and argued in a pretrial hearing on March 31, 1994, before a panel of Seattle Municipal Court judges. Acting in their "appellate" capacity, those judges issued a memorandum opinion, concluding that SMC 11.56.020(A)(1)(a) was unconstitutional, violating WASH. CONST. art. XI, § 11.

DISCUSSION
A. Constitutional Analysis
The majority does not undertake the analysis set forth in our cases to determine if the Seattle DUI ordinance satisfies art. XI, § 11. Plainly, the Seattle ordinance does not violate the Washington Constitution.
1. Seattle's DUI Ordinance
Under Seattle's Municipal Code, as under state law, a defendant can be guilty of driving under the influence of intoxicating liquor or drugs in one of three ways. A defendant is guilty of DUI per se if such person has, within two hours of driving, an alcohol concentration of 0.10 or higher, as determined by appropriate breath or blood test. RCW 46.61.502(1)(a); RCW 46.61.506; SMC 11.56.020(A)(1)(a). Second, a person is guilty of DUI if such a person operates a motor vehicle while under the influence of or affected by an intoxicating liquor or drug. RCW 46.61.502(1)(b); SMC 11.56.020(A)(1)(c). Finally, a person is guilty of DUI if such person operates a motor vehicle under the combined influence of or affected by intoxicating liquor and any drug. RCW 46.61.502(1)(c); SMC 11.56.020(A)(1)(d). Thus, driving with a blood alcohol level of .09 grams is not legal under state law if one is found to be under the influence of an intoxicating liquor; it is just not illegal per se.
2. Art. XI, § 11
The City of Seattle is a charter city and, as such, derives its authority under its charter from art. XI, § 10, of the Washington Constitution, which provides:
Any city containing a population of ten thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state ...
Such charters confer significant independence to such municipalities although they are "subject to and controlled by" the general laws of the state. Mosebar v. Moore, 41 Wash.2d 216, 222, 248 P.2d 385 (1952); State ex rel. Billington v. Sinclair, 28 Wash.2d 575, 183 P.2d 813 (1947); State ex rel. Griffiths v. Superior Court, 177 Wash. 619, 33 P.2d 94 (1934); Walker v. City of Spokane, 62 Wash. 312, 113 P. 775 (1911). This grant of police power to charter cities is self-executing: the constitution neither requires nor prescribes enabling legislation.[1]
*368 Art. XI, § 11 of the Washington Constitution permits cities to "make and enforce within [their] limits all such local police, sanitary and other regulations as are not in conflict with general laws." Numerous Washington cases have construed art. XI, § 11. In Brown v. City of Yakima, 116 Wash.2d 556, 807 P.2d 353 (1991), a case involving a Yakima ordinance that was more stringent than the state statute regulating fireworks, this court stated:
Art. XI, § 11 is a direct delegation of legislative power.
[This power is] as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws.

Hass v. [City of] Kirkland, 78 Wash.2d 929, 932, 481 P.2d 9 (1971) (quoting Detamore v. Hindley, 83 Wash. 322, 326, 145 P. 462 (1915)).
Under article 11, section 11, cities have the right to enact ordinances prohibiting the same acts state law prohibits so long as the state enactment was not intended to be exclusive and the city ordinance does not conflict with the general law of the state. [City of] Bellingham v. Schampera, 57 Wash.2d 106, 109, 356 P.2d 292, 92 A.L.R.2d 192 (1960). Thus, the ordinance must yield to a statute on the same subject either if the statute preempts the field, leaving no room for concurrent jurisdiction, Diamond Parking, Inc. v. [City of] Seattle, 78 Wash.2d 778, 781, 479 P.2d 47 (1971), or if a conflict exists such that the two cannot be harmonized. [City of] Spokane v. J-R Distribs., Inc., 90 Wash.2d 722, 730, 585 P.2d 784 (1978).
Brown, 116 Wash.2d at 559, 807 P.2d 353. Thus, an ordinance is not in conflict with general law for purposes of art. XI, § 11 unless (1) the state has expressly or impliedly preempted the field, or (2) the ordinance permits what state law forbids, or vice versa.
3. Preemption
The majority, while correctly noting that Schampera expressly held state law does not preempt the field of regulating driving while intoxicated, nevertheless reaches a conclusion that effects preemption sub silentio: "Thus, a city is free to enact and enforce ordinances relating to the regulation of the operation of vehicles on public highways, as long as the ordinance does not interfere with the statutory uniformity requirement." Majority op. at 365. By "interfere with," the majority plainly means "differ from." Under the majority's Procrustean reading of the uniformity statutes, local ordinances are permissible only so long as they say the same thing as statutes. This interpretation runs counter to art. XI, § 11, and our case law defining conflicts between statutes and ordinances.
Moreover, the Legislature, as recently as 1994, has expressly rejected efforts to preempt the field of driving under the influence of intoxicating liquors. In 1994, the House actually adopted the following amendment to Substitute Senate Bill 6047:

NEW SECTION. Sec. 34. A new section is added to chapter 46.61 RCW to read as follows:
The state of Washington hereby fully occupies and preempts the entire field of regulating driving or being in physical control of a vehicle while under the influence of intoxicating liquor or any drug within the boundaries of the state. No jurisdiction may enact a law or ordinance that is different from, inconsistent with, more restrictive than, or less restrictive than state law in this field, and any such law or ordinance in existence on the effective date of this section is preempted and repealed, regardless of the nature of the code, charter, or home rule status of the town, city, county, or other jurisdiction that enacted the law or ordinance.
House Journal, vol. 1, at 1119 (1994). The Legislature ultimately did not adopt the new section. Id. at 1529. Plainly, the Legislature refused to preempt the field in DUI. This court should not interpret statutes in a *369 way that is directly contrary to express legislative intent, especially when the Legislature has expressed its intent so recently.[2] Clearly, the Seattle DUI ordinance is not preempted by state law, expressly or impliedly.
4. Conflict With State Law
Even if the Seattle DUI ordinance is not preempted by state law, the analysis under art. XI, § 11 does not end with that determination. If the local ordinance is somehow in conflict with general law, art. XI, § 11 may preclude its enforcement. Again, numerous Washington cases have established the standard for interpreting whether a local ordinance is in conflict with general state law. In Schampera, we said:
"`"In determining whether an ordinance is in "`conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." Village of Struthers v. Sokol, 108 Ohio St. 263, 140 N.E. 519 (1923). Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits' State [ex rel. Cozart] v. Carran, 133 Ohio St. 50, 11 N.E.2d 245, 246 [(1937)].
"`The statute, as well as the ordinance, in the case at bar, is prohibitory, and the difference between them is only that the ordinance goes farther in its prohibitionbut not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the Legislature has forbidden; nor does it forbid what the Legislature has expressly licensed, authorized, or required.... Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail. Bodkin v. State [132 Neb. 535] 272 N.W. 547 [(1937) ]; City of Mobile v. Collins, 24 Ala.App. 41, 130 So. 369' [ (1930) ]. Fox v. City of Racine, 225 Wis. 542, 275 N.W. 513, 515 [ (1937) ]."
Schampera, 57 Wash.2d at 111, 356 P.2d 292. See also City of Seattle v. Eze, 111 Wash.2d 22, 759 P.2d 366 (1988); Town of Republic v. Brown, 97 Wash.2d 915, 652 P.2d 955 (1982).
This court has specifically indicated that a local ordinance does not conflict with general state law simply because the ordinance prohibits a wider scope of activity. Brown, 116 Wash.2d at 562, 807 P.2d 353. So long as both the ordinance in question and state statute are prohibitory in nature, and the local ordinance merely goes further in its prohibition, the ordinance is not inconsistent with state statute simply because of this lack of uniformity in detail. Id.
Plainly, the Seattle DUI ordinance is not inconsistent with general state law. The ordinance does not license or authorize conduct expressly prohibited under state statute. State law does not limit the ability of the City of Seattle to adopt such an ordinance. In fact, the Seattle ordinance is quite consistent with state law in proscribing driving under the influence of alcohol.
The major flaw in the majority's analysis is the implication that if an individual is operating a motor vehicle with a blood alcohol level of .09, such individual is operating the vehicle in accordance with state law. The majority is wrong. In fact, both state statute and the Seattle DUI ordinance forbid operating a motor vehicle under the influence of an intoxicating liquor. RCW 46.61.502(1); SMC 11.56.020(A)(1)(c). Such conduct may be punishable under state law or local ordinance. Operation of a motor vehicle with a blood alcohol level of .09 would not arise to the level of a per se crime under state statute, although it would do so under the challenged ordinance here. Seattle's determination to establish a lower level for a per se crime is plainly not inconsistent with state law, but rather advances the general policy of Washington's DUI statutes to prevent drinking and driving. The ordinance merely prohibits a wider scope of activity and, as such, is not unconstitutional under art. XI, § 11. Brown, 116 Wash.2d at 562, 807 P.2d 353.
*370 B. Statutory Uniformity Analysis
The majority rests its opinion on the provisions of RCW 46.08.020 and RCW 46.08.030. The statutes in question require Washington's traffic and motor vehicle laws, as set forth in Title 46 RCW, to be applicable and uniform throughout the state and in all political subdivisions of the state.[3]
The statute goes on to say that "[l]ocal authorities may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions of this title." The majority ignores this statutory language, even though the majority notes the customary rule of statutory construction that its interpretation should not render any part of a statute superfluous. Majority op. at 362-63.
The majority effectively determines that the language in sections .020 and .030 constitutes a preemption of local traffic ordinances, requiring every local jurisdiction to adopt identical traffic laws to those of the State of Washington. With respect to DUI, however, this analysis is specifically contradicted by the decision of this court in Schampera and the legislative history of Washington's DUI laws.
The majority cites no authority for the proposition that RCW 46.08.020 and RCW 46.08.030 require a more stringent analysis of conflicts between local ordinances and state enactments than art. XI, § 11. Indeed, the central basis for the majority's view is that the Legislature does not engage in meaningless acts, and therefore RCW 46.08.020 and RCW 46.08.030 must mean something. Majority op. at 365. Nevertheless, the Legislature in those statutes cannot expand or constrain the constitutional grant of power to municipalities in art. XI, § 11. Thus, the correct reading of the language of RCW 46.08.020 and 46.08.030 dictates that those statutes cannot be any more restrictive than the language of art. XI, § 11, which permits cities to "make and enforce within [their] limits all such local police, sanitary and other regulations as are not in conflict with general laws." The statutes do not, however, interfere with the constitutional grant of power because both art. XI, § 11, and the statutes permit local legislation only if such ordinances do not "conflict with general laws." Thus, the operative language of RCW 46.08.020 must mirror the language of art. XI, § 11 and does so when it provides: "Local authorities may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions of this title." This portion of the statute accords proper deference to art. XI, § 11's grant of power to municipalities.[4]
If the majority goes beyond a tacit preemption analysis to an analysis of whether Seattle's ordinance is in conflict with general state law, as required by the express authorization to municipalities in RCW 46.08.020 to adopt additional vehicle and traffic regulations that are "not in conflict with the provisions of this title," it is plain that SMC 11.56.020 survives a challenge based on a statutory uniformity analysis. See Fazio v. Eglitis, 54 Wash.2d 699, 344 P.2d 521 (1959); Sandona v. City of Cle Elum, 37 Wash.2d *371 831, 226 P.2d 889 (1951). See also Kimmel v. City of Spokane, 7 Wash.2d 372, 109 P.2d 1069 (1941) (state law on parking on highways allowing local governments to adopt additional vehicle and traffic regulations "not in conflict with" the statute).
Seattle's ordinance does not conflict with general state DUI law. This is not a situation like that found in Town of Republic v. Brown, 97 Wash.2d 915, 652 P.2d 955 (1982), where the Town of Republic enacted an ordinance creating a presumption that a person with a .10 percent or greater blood alcohol content was under the influence of intoxicating liquor and provided for a discretionary jail sentence when state statute made a person with a .10 percent blood alcohol guilty per se of being under the influence of intoxicating liquors and required a mandatory one day jail sentence. There, the local ordinance permitted what the state statute forbade. In this case, the state statute does not permit an individual to drive with a .09 grams of alcohol in 210 liters of breath. Such an individual could be found guilty of DUI under RCW 46.61.502(1). In Seattle, that individual simply would be guilty per se under Seattle's DUI ordinance. Seattle chose to be more stringent in its application of its police powers than was the State of Washington. This more stringent application of the general principle does not make for a conflict between Seattle's DUI ordinance and state law under RCW 46.08.020.

CONCLUSION
Despite this court's decision in Schampera that local DUI ordinances are not foreclosed by state law, and the Legislature's decision not to preempt the field of DUI, the majority effectively holds that local DUI ordinances are preempted. The majority's interpretation of RCW 46.08.020 does not square with the constitutional grant of police powers to municipalities under art. XI, § 11. The majority does not engage in a conflict analysis as is required both by RCW 46.08.020 and art. XI, § 11. Under either standard, had the majority undertaken a conflict analysis, it is clear that there is no conflict as both the Seattle DUI ordinance and general state law prohibit driving under the influence of intoxicating liquors. The majority's decision here undercuts both the general principle of local control by local municipalities and the strong public policy in Washington that removes drinking drivers from the road. The Legislature has expressly refused to enact legislation preempting local ordinances relating to driving under the influence of intoxicating liquors. This court should not contravene such clearly stated legislative intent.
In support of his position, Williams offers the following argument:
If traffic laws were not uniform, there would be a crazy quilt of potential restrictions. Imagine if each municipality set a different alcohol limit: A person driving east on I-90 would be subject to Seattle's.08 limit, the Mercer Island's .06 limit, then Bellevue's .07 limit, then unincorporated King County's at .10, and Issaquah's .06.... This kind of balkanization will only lead to more inequities and illustrates the wisdom of uniformity.
(Br. of Resp't at 15-16.) I confess to a different level of solicitude toward those driving under various degrees of intoxication. The way to avoid the so-called "inequities" in various hypothetical drunk driving laws is not to drive under the influence of intoxicating liquors. Neither the Washington Constitution nor any state law forbids the City of Seattle from enacting an ordinance making driving with .08 grams a per se infraction. I would reverse the trial court and remand this case for trial under the .08 standard.
DOLLIVER and SMITH, JJ., concur.
NOTES
[1] Seattle Municipal Court, Citation No. 53832914, issued to Def. on Dec. 18, 1993.
[2] RCW 46.61.502(1)(a) (1993) (as amended by Laws of 1993, ch. 328, § 1, at 1274 (effective July 25, 1993)).
[3] Although each judge was deciding only the case or cases assigned to him or her, the panel issued a joint memorandum opinion that was authored by the Honorable Helen Halpert and signed by the other seven members of the panel: Judges MacInnes, Kondo, Schaefer, Hurtado, Bonner, Hightower and Judge Pro Tempore Elsa Durham.
[4] Article XI, section 11 of the state constitution provides that: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."
[5] At the time of this proceeding, SMC 11.56.020(L)(3) provided that: "[i]n the event that a court should declare this ordinance void, then the level of 0.10 rather than 0.08, shall be in full force and effect, and prosecutions shall be made and shall continue thereunder as if the amendments reducing blood and breath alcohol ratios had not been made." SMC 11.56.020(L)(3) (as amended on Sept. 30, 1993, by Seattle Municipal Ordinance 116880). See also Seattle Municipal Ordinance 117155 § 4, adopted May 31, 1994.
[6] Seattle Municipal Code 11.56.020(A)(1)(c) provides that a driver whose driving is affected by the consumption of intoxicating liquor violates the ordinance prohibiting driving while intoxicated, regardless of the level of the driver's BAC reading.
[7] Although there is no provision in the Rules of Appellate Procedure authorizing direct review of a decision of this sort, we waived the rules to afford expeditious review. RAP 1.2(c).
[8] The central thrust of Williams's argument is that the Legislature has expressed a need for uniformity in traffic laws. Although Williams couches his argument, in part, in terms of a preemption analysis, which we discuss below, at pages 364-65, we are persuaded to address his argument primarily in the sense that directly relates to the uniformity issue, which is the central focus of this opinion.
[9] These statutes, like the remainder of RCW Title 46, are patterned generally after the 1962 Uniform Vehicle Code. See State v. MacRae, 101 Wash.2d 63, 66, 676 P.2d 463 (1984). The authors of the uniform code regard it as important to "achiev[e] uniformity in traffic laws not only among the various states but also among the political subdivisions within each state." Simpson v. Municipality of Anchorage, 635 P.2d 1197, 1202 (Alaska App.1981). See also National Comm. on Uniform Traffic Laws & Ordinances, Traffic Laws Annotated § 15-101, at 337, Appendix 355 (1979).
[10] The related concept of "uniformity" is a key word in the field of state taxation. It is similarly undefined in statute. This court, however, has considered "uniformity" to be synonymous with "equality" in the context of taxation. See Boeing Co. v. King County, 75 Wash.2d 160, 165, 449 P.2d 404 (1969) ("If equality is lacking in either... the rate of taxation or the assessment ratio... there will be a lack of uniformity in the tax burden.").
[11] In Bellingham v. Schampera, 57 Wash.2d 106, 112-13 n. 2, 356 P.2d 292 (1960), this Court noted that, in Title 46, references to the phrase "the provisions of this title" could not be taken literally. When the motor vehicle laws were recodified in 1961, the then-existing acts, adopted at different times, were combined under a single Title, and references to "this act" in the various laws were changed by the codifier to read "this title." The Schampera court's caution does not apply here, however, because the statute defining the offense of driving while intoxicated was part of the original Washington Motor Vehicle Act, the same measure that contained the language of what is now RCW 46.08.020 and RCW 46.08.030. See Laws of 1937, ch. 189, secs. 2, 3, 119. Thus, the provision relating to driving while intoxicated was within the scope of "this act," when it was originally enacted, and remains within the scope of "this title."
[12] We are not unmindful of the contention in the dissent that charter cities, like Seattle, are somehow exempt from this provision. This view, however, ignores the plain language of RCW 46.08.020 requiring uniform traffic laws. This statute makes no exception on the basis of classification, form of governance, or otherwise. Also, the authority cited in the dissent to support the contention is inapplicable because it speaks to the authority of municipalities to fashion a charter, and does not relate to a city's power to enact local ordinances. See Dissenting Op. at 367, n. 1.
[13] As we have noted in our discussion of Schampera, municipalities are free to adopt traffic ordinances that are essentially identical to statute. See Schampera, 57 Wash.2d at 111, 356 P.2d 292.
[14] While we agree with the statement in the dissent that state law does not preempt the field of regulating while driving while intoxicated, Dissenting Op. at 368, we disagree with the suggestion that the Legislature's rejection of a proposed provision that would have made it the policy of the state of Washington to "fully occup[y] and preempt[ ] the entire field of regulating driving ... while under the influence of intoxicating liquor." 1 House Journal, 53rd Leg., Reg.Sess. 1119 (1994) (House amendment to Substitute Senate Bill 6047). Legislative history, at best, must be viewed with some caution. See United States v. Thompson/Center Arms Co., 504 U.S. 505, 521, 112 S.Ct. 2102, 2111, 119 L.Ed.2d 308 (1992) (Scalia, J., concurring) (Reference to legislative history is the "last hope of lost interpretive causes, that St. Jude of the hagiology of statutory construction."). Where, as here, only one chamber embraces a proposed statutory provision, it is difficult to discern what intent is being expressed, let alone determine whether the ultimate rejection of the provision actually evinces an intention at all. See Baker v. Snohomish County Dep't of Planning, 68 Wash.App. 581, 588, 841 P.2d 1321 (1992), review denied, 121 Wash.2d 1027, 854 P.2d 1085 (1993). Assuming, however, that some meaning can be discerned from the Legislature's rejection of the House amendment to SSB 6047, that meaning could only be that the State did not intend to "fully occup[y]" or "preempt[] the entire field." Such a conclusion supports, rather than undercuts, our view that the statute leaves room for the State and its political subdivisions to invoke concurrent jurisdiction over some aspects of traffic regulation and enforcement.
[1] The majority opinion cites State v. City of Aberdeen, 34 Wash. 61, 68, 74 P. 1022 (1904), for the proposition that a city is only a political subdivision of the State. Majority op. at 364. While that may be true as a general statement, it blurs the important constitutional distinction of charter cities like Seattle. "Constitutional home rule provisions [like art. XI, § 10] ... authorize municipalities to adopt charters even in the absence of enabling legislation." Philip A. Trautman, Legislative Control of Municipal Corporations in Washington, 38 WASH.L.REV. 743, 765 (1963). "Municipal home rule in its broadest sense means the power of local self-government." 1 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 1.41, at 55 (3d ed. 1987). See City of Seattle v. Auto Sheet Metal Workers Local 387, 27 Wash.App. 669, 683-85, 620 P.2d 119 (1980) (discussing powers of charter cities), review denied, 95 Wash.2d 1010 (1981), overruled on other grounds, City of Pasco v. Public Employment Relations Comm'n, 119 Wash.2d 504, 833 P.2d 381 (1992). The limitation on such power is straightforward: "the provisions of the charter shall not be in contravention of any legislative enactment." State ex rel. Griffiths, 177 Wash. at 623, 33 P.2d 94.
[2] We are not free to interpret statutes in a manner directly contrary to legislative intent: "It has never been suggested, however, that the judiciary may openly ignore a legislative judgment on any grounds other than unconstitutionality." Martin H. Redish, Abstention, Separation of Powers, and the Limits of the Judicial Function, 94 YALE L.J. 71, 76 (1984).
[3] RCW 46.08.020 provides that "no local authority shall enact or enforce any law, ordinance, rule or regulation in conflict with the provisions of this title except and unless expressly authorized by law to do so and any laws, ordinances, rules or regulations in conflict with the provisions of this title are hereby declared to be invalid and of no effect." The majority observes that uniformity of traffic regulations was an important goal of the Uniform Vehicle Code, after which RCW Title 46 is fashioned. Majority op. at 363 n. 9. That is true, but Washington has explicitly declined to follow the development of uniformity. RCW 46.080.020 and .030 were enacted in 1961, and have not changed since. The cognate provision of the Uniform Vehicle Code, on the other hand, was amended in 1968 to make state laws preemptive of local ordinances. TRAFFIC LAWS ANNOTATED § 15-101, at 337 (1979). Likewise, Williams asserts "41 other states ... statutorily require traffic law uniformity." (Br. of Resp't at 19 and n. 5.) A brief perusal of some of the statutes Williams cites shows, however, that Williams has confused the concept of uniformity or consistency with preemption in his reading of those statutes. As noted, Washington has explicitly chosen not to enact a preemption statute.
[4] This interpretation of RCW 46.08.020 and .030 is bolstered by the fact that the Legislature felt compelled to debate the question of whether local DUI ordinances are expressly preempted by state law at all. Plainly, the fact that the Legislature felt that it needed to discuss such an issue implied that local DUI ordinances not in conflict with general state law are not preempted.