[No. 41939-1-I.  Division One.  September 20, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JERMAINE
DAVID GREENE, *Appellant*.

*Elise Naomi Gautama* of *Washington Appellate Project*,
for appellant.

*Norm Maleng, Prosecuting Attorney*, and *John F. McHale*
and *Catherine Marie Myers, Deputies*, for respondent.

APPELWICK, J. — The issue on appeal is whether the Seattle municipal ordinance defining the crime of pedestrian interference conflicts with Washington law. Under both the city ordinance and state statute, a person who intentionally obstructs vehicular traffic is guilty of a crime. Here, police officers had probable cause to believe that appellant Jermaine Greene intended to obstruct traffic when he walked directly into the path of an oncoming patrol car. Because both city and state law classify this behavior as a misdemeanor, the two laws do not conflict when applied to the facts of this case. We therefore affirm.

## FACTS

On September 1, 1997, Officers Brian Guenther and Melvin Britt were driving a marked police vehicle down Rainier Avenue when they saw Jermaine Greene standing on the sidewalk. According to Guenther and Britt, Greene looked in the direction of the officers and then stepped into the roadway right into the path of the oncoming patrol car. In order to avoid striking Greene, Guenther activated his emergency lights and swerved into another lane. Guenther then pulled the patrol car to the side of the roadway and contacted Greene on the sidewalk.

Officers Guenther and Britt believed that Greene's behavior constituted the misdemeanor crime of pedestrian interference, as set forth in SEATTLE MUNICIPAL CODE (SMC) 12A.12.015. The officers therefore believed they had authority to arrest Greene.[1] Guenther asked Greene to place his hands on the patrol car and conducted a pat-down search.

During the search, Guenther felt a small hard bindle in

---

[1] A police officer may arrest a person without a warrant for committing a misdemeanor when the offense is committed in the presence of the officer. RCW 10.31.100. Greene committed the offense in the officers' presence; assuming the offense was a misdemeanor, the officers did not need a warrant to arrest him.

the right front pocket of Greene's pants. Guenther asked Greene what was in his pocket and Greene replied that it was his medication.[2] Although Guenther could not positively identify the object, he believed that Greene might be in possession of illegal narcotics. Guenther handcuffed Greene and retrieved the bindle, which was a piece of envelope paper containing 11 small blue pills. According to Officer Britt, after being advised of his *Miranda* (*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966)) rights, Greene stated that the pills were Valium and that he had a valid prescription for them.

Greene was charged in King County Superior Court, Juvenile Division, with possession of a controlled substance, diazepam. The parties later stipulated to the admission of a crime laboratory report confirming that the pills contained diazepam.

On December 12, 1997, a CrR 3.5, CrR 3.6, and fact-finding hearing was held. The juvenile court found that Greene's arrest was valid because officers had probable cause to believe that he had committed the crime of pedestrian interference. The court found that the officers therefore had authority to search Greene incident to arrest, and that the search was reasonable. Thus, the court denied Greene's motion to suppress the physical evidence. The court also found that Greene had validly waived his *Miranda* rights, and that his statements were admissible.

Greene was found guilty of unlawful possession of a controlled substance, and received a standard range disposition of 21 to 28 weeks commitment. He now appeals.

## ANALYSIS

Greene argues that SMC 12A.12.015, the Seattle Municipal Code provision defining the crime of pedestrian interfer-

---

[2]Guenther testified that he asked Greene what was in his pocket in order to ascertain whether the object was a needle or other dangerous item; Guenther's aim was to avoid injuring himself when he retrieved the object from Greene's pocket.

ence, is preempted by Washington's traffic statute because the two laws are in conflict. According to Greene, his behavior here amounted to mere jaywalking under state law, which is not a criminal offense. If this is the case, Officer Guenther's search was not a search incident to lawful arrest, and the trial court erred in admitting the physical evidence seized during that search. We hold that the city ordinance does not conflict with state law under the facts of this case.

We review de novo the question of whether the municipal ordinance conflicts with state law. *See City of Seattle v. Williams*, 128 Wn.2d 341, 347, 908 P.2d 359 (1995). We review the court's factual findings under the substantial evidence standard. *See Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

Municipalities may not enact laws "in conflict with the provisions of [Title 46]." RCW 46.08.020; *Williams*, 128 Wn.2d at 350. In other words, laws relating to vehicles and their operation must " 'lack variation' throughout the state." *Id*. In particular, acts prohibited by the statute must be "uniformly proscribed throughout the state." *Id*.

Nonetheless, the Legislature did not intend by this language to preempt the entire field of traffic regulation. A city may enact its own traffic laws, as long as they do not conflict with the provisions of Title 46. RCW 46.08.020; *Williams*, 128 Wn.2d at 353-54. The test for determining whether a municipal ordinance is "in conflict" with state law is whether the ordinance expressly permits or licenses that which the statute forbids and prohibits, or vice versa. *City of Bellingham v. Schampera*, 57 Wn.2d 106, 111, 356 P.2d 292, 92 A.L.R.2d 192 (1960).

If a municipal ordinance criminalized behavior amounting to mere jaywalking under state law, the ordinance would run afoul of the uniformity requirement of RCW 46.08.020. Washington's traffic statute defines jaywalking as a traffic infraction, not as a crime. *See* RCW 46.63.020. Furthermore, an act amounting to a pedestrian offense

"may not be classified as a criminal offense," unless the act falls into one of the statutory exceptions not relevant here. RCW 46.63.020; *State v. Rife*, 133 Wn.2d 140, 145, 943 P.2d 266 (1997).

The SEATTLE MUNICIPAL CODE's jaywalking provision proscribes the same behavior as Washington's jaywalking statute. The municipal provision provides that "every pedestrian crossing a roadway at a point other than at designated crosswalks or other than within an unmarked crosswalk at an intersection shall yield right-of-way to all vehicles upon the roadway." SMC 11.40.090(A). Similarly, Title 46 provides that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway." RCW 46.61.240. Like Title 46, the municipal code defines jaywalking as a traffic infraction, not as a criminal offense. SMC 11.31.010.

Seattle's pedestrian interference ordinance criminalizes behavior that is more egregious than mere jaywalking. The municipal provision provides that "[a] person is guilty of pedestrian interference if, in a public place, he or she intentionally [o]bstructs pedestrian or vehicular traffic." SMC 12A.12.015(B)(1). "Obstruct pedestrian or vehicular traffic" means to "walk, stand, sit, lie or place an object in such a manner as to block passage by another person or vehicle, or to require another person or a driver of a vehicle to take evasive action to avoid physical contact." SMC 12A.12.015(A)(4). Pedestrian interference is classified as a misdemeanor under the city code. SMC 12A.12.015(C). Behavior amounting to pedestrian interference is more egregious than jaywalking, because it involves an intent to obstruct traffic.

Like the municipal code, a Washington statute provides that a person who intentionally obstructs vehicular traffic is guilty of a crime: "A person is guilty of disorderly conduct if he . . . intentionally obstructs vehicular . . . traffic without lawful authority." RCW 9A.84.030(1)(c). The stat-

ute does not define "obstruct," but Webster's Third New International Dictionary defines the word as "to block up: stop up or close up." Webster's Third New International Dictionary at 1559 (1993). Disorderly conduct is a misdemeanor. RCW 9A.84.030(2).

■ Thus, if the facts here reveal that the police officers had probable cause to believe that Greene had intentionally obstructed traffic, then probable cause would exist to believe he had committed a crime under both municipal and state law. Probable cause exists when facts and circumstances within the arresting officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed. *State v. Huff*, 64 Wn. App. 641, 646, 826 P.2d 698 (1992).

The record contains substantial evidence that the officers had probable cause to believe that Greene intended to obstruct traffic. Officer Guenther testified that Greene was "looking directly at us" when he stepped into the roadway. Greene stepped right into the path of the oncoming patrol car. The officers and several other drivers had to swerve to avoid hitting him. This evidence suggests that Greene intended to require the driver of a vehicle "to take evasive action to avoid physical contact," and that he intended to "stop up" traffic. Because both the state's disorderly conduct statute, and Seattle's pedestrian interference ordinance, proscribe this behavior, the two laws are not in conflict.

Officers Guenther and Britt had probable cause to arrest Greene for the crime of pedestrian interference. Thus, Officer Guenther's pat-down search was a search incident to lawful arrest, and the court did not err in admitting the evidence seized from that search.

Affirmed.

Kennedy, C.J., and Webster, J., concur.