# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48131-6-II |
| Appellant, | |
| vs. | UNPUBLISHED OPINION |
| BRENTON ALLEN SMITH, | |
| Respondent. | |

MAXA, A.C.J. – The State appeals the trial court's order suppressing controlled substances discovered in a search incident to Brenton Smith's arrest for disorderly conduct. A police officer arrested Smith because he was behaving oddly in the middle of the road and was preventing the officer from driving past. The State argues that the trial court erred in concluding that the arresting officer did not have probable cause to arrest and search Smith.

We hold that there was no evidence or reasonable inference from the evidence that Smith intended to block traffic, and therefore that the trial court did not err in suppressing evidence seized in a search incident to Smith's arrest and in dismissing the State's case against Smith. Accordingly, we affirm.

## FACTS

On May 30, 2015, at approximately midnight, Shelton Police Officer Robert Auderer was driving in his patrol vehicle in Shelton. He turned a corner and observed Smith walking in the

middle of the road, not in a crosswalk. Auderer stopped his patrol vehicle to avoid hitting Smith. After stopping, Auderer observed Smith remain in the road for at least five seconds "walking back and forth, moving oddly, and spitting Pringles into the air." Clerk's Papers (CP) at 5 (Findings of Fact (FF) 4). Smith looked at Auderer but did not leave the middle of the road.

Auderer got out of his vehicle and approached Smith, who was still in the middle of the road. Auderer contacted him, and Smith said that he was " 'just walking.' " CP at 5 (FF 5). Smith interrupted Auderer and Auderer had a difficult time tracking Smith's responses. Auderer also observed that Smith was " 'moving like a parakeet.' " CP at 5 (FF 5). Based on his observations, Auderer believed that Smith was showing signs of methamphetamine intoxication. Auderer then arrested Smith for disorderly conduct. In a search of Smith incident to arrest, Auderer discovered a methamphetamine pipe, baggies with trace amounts of what appeared to be methamphetamine, and four sealed transdermal fentanyl patches.

The State charged Smith with unlawful possession of a controlled substance (fentanyl). Smith moved to suppress the evidence discovered in the search, claiming that Auderer lacked probable cause to arrest him for disorderly conduct because he did not intend to obstruct traffic. The trial court made findings of fact and the following conclusion of law: "Officer Robert Auderer did not have probable cause to arrest Mr. Smith for the disorderly conduct because Mr. Smith appeared to be under the influence of methamphetamine and therefore did not have the intent to obstruct vehicular traffic." CP at 5 (Conclusions of Law (CL) 2). Therefore, the trial court concluded that Auderer did not have lawful authority to search Smith, suppressed the evidence, and dismissed the charge without prejudice.

The State appeals the trial court's suppression of the evidence.

ANALYSIS

A.    LEGAL STANDARDS

    1.    Standard of Review

When reviewing an order on a suppression motion, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise. *Id*. We treat unchallenged findings of fact as verities on appeal. *State v. Valdez*, 167 Wn.2d 761, 767, 224 P.3d 751 (2009). We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Garvin*, 166 Wn.2d at 249.

    2.    Search Incident to Arrest

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless searches unless one of the narrow exceptions to the warrant requirement applies. *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913 (2015), *review denied*, 185 Wn.2d 1032 (2016). The State has the burden of establishing an exception. *Id*. at 658-59.

One exception to the warrant requirement is a search incident to arrest. *State v. Brock*, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015). But before an officer may search a person incident to arrest, that arrest must be lawful. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007). The lawfulness of an arrest depends on whether there was probable cause to arrest. *Id.*

A law enforcement officer has probable cause to arrest if " 'the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy

information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.' " *State v. Barron*, 170 Wn. App. 742, 750, 285 P.3d 231 (2012) (*quoting State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)). Whether probable cause exists depends on the totality of the facts and circumstances within the arresting officer's knowledge at the time of the arrest. *Barron*, 170 Wn. App. at 750. For a misdemeanor, an officer may arrest a person without a warrant if they have reason to believe that he or she has committed a misdemeanor in the officer's presence. RCW 10.31.100.[1]

B.     INTENT TO OBSTRUCT TRAFFIC

The State argues that the trial court erred in reaching the legal conclusion that Auderer did not have probable cause to arrest Smith. We disagree.

1.     Intent Requirement

Under RCW 9A.84.030(c), a person commits the misdemeanor crime of disorderly conduct when he "[i]ntentionally obstructs vehicular or pedestrian traffic without lawful authority." Because this statute requires an obstruction of traffic to be intentional, it does not prohibit "innocent" deliberate acts that have the consequence of blocking traffic. *See City of Seattle v. Webster*, 115 Wn.2d 635, 641-42, 802 P.2d 1333 (1990) (addressing a Seattle ordinance that prohibited intentionally blocking passage by a vehicle). The Supreme Court in *Webster* stated that merely sauntering or loitering in a public road is lawful and is the right of every person. *Id.* at 642.

---

[1] This statute has been amended twice since May 30, 2015. *See* LAWS OF 2016, ch. 203, § 9; LAWS OF 2016, ch. 113, § 1. However, these changes have not substantively changed the section of RCW 10.31.100 cited here.

"A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). Intent to commit a criminal act means more than mere knowledge that a particular consequence will result. *State v. Bea*, 162 Wn. App. 570, 579, 254 P.3d 948 (2011). The known or expected result also must be the person's objective or purpose. *Id.*

Where there is no direct evidence, intent can be inferred from circumstantial evidence. *Id.* Intent to commit a criminal act can be inferred from the defendant's conduct when that conduct and the surrounding facts and circumstances " 'plainly indicate such an intent as a matter of logical probability.' " *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)). In addition, intent to commit a criminal act can be based on an inference or a permissive presumption that a person intends the natural and probable consequences of his or her acts. *Bea*, 162 Wn. App. at 579. But intent to commit a criminal act cannot be inferred from evidence that is patently equivocal. *Vasquez*, 178 Wn.2d at 8.

### 2. Probable Cause Analysis

#### a. Intoxication

The sole stated basis for the trial court's conclusion that Auderer did not have probable cause to arrest Smith was that "Mr. Smith appeared to be under the influence of methamphetamine and therefore did not have the intent to obstruct vehicular traffic." CP at 5 (CL 2). To the extent this conclusion of law reflects the trial court's determination that Smith's intoxication negated his ability to form an intent to obstruct traffic, the findings of fact do not support this conclusion.

A person can be intoxicated and still be able to form criminal intent. *State v. Thomas*, 123 Wn. App. 771, 780-81, 98 P.3d 1258 (2004). The fact of mere impairment is insufficient to negate intent; there must be evidence from which to reasonably and logically conclude that intoxication caused the defendant to be unable to form the requisite intent. *See id.* at 781 n. 17; *State v. Gabryschak*, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996).

Here, the trial court entered findings that Smith was acting oddly, that Auderer had trouble tracking Smith's responses, that Smith was moving like a parakeet, and that Auderer believed Smith was showing signs of methamphetamine intoxication. These findings certainly were sufficient to support a conclusion that Smith was intoxicated. However, there are no findings and no indication in the record that Smith was so intoxicated that he could not form an intent to obstruct traffic.

Smith states that he did not argue and the trial court did not conclude that Smith's intoxication negated his ability to form the required intent. Instead, Smith argues that his intoxication was simply one factor in determining whether he was acting with intent to obstruct traffic. The trial court's oral ruling arguably supports this position: "The conduct of Mr. Smith appeared to be one who was under the influence, not one who was intending to obstruct traffic." Report of Proceedings at 19.

In any event, we review de novo the trial court's legal conclusion that Auderer did not have probable cause to arrest Smith. *Garvin*, 166 Wn.2d at 249. Therefore, we must determine under the totality of the circumstances – including Smith's intoxication – whether Auderer had probable cause to believe that Smith intended to obstruct traffic.

6

b.    No Direct Evidence of Intent

Here, there is no direct evidence that Smith intended to block traffic.  He was walking in the middle of Franklin Street before Auderer's patrol vehicle turned onto the road.  This incident occurred at midnight and the trial court made an oral finding that there was no other traffic.  Therefore, before Auderer arrived there was no traffic for Smith to block.

When Auderer arrived and stopped his vehicle, Smith continued to walk back and forth in the road.  There is no evidence that he altered his behavior in any way in order to affect traffic.  Instead, he was showing signs of methamphetamine intoxication.

Finally, Smith made no statements suggesting that he intended to obstruct traffic.  He told Auderer that he was just walking.  And Smith's manner of speaking apparently contributed to Auderer's belief that Smith was intoxicated.

The State relies on *State v. Greene*, where one of the issues was whether officers had probable cause to believe that the defendant intended to obstruct traffic under a Seattle ordinance similar to RCW 9A.84.030(c).  97 Wn. App. 473, 478, 983 P.2d 1190 (1999).  In that case, the defendant was looking directly at the officers when he stepped onto the road and directly into the path of their oncoming patrol car.  *Id.*  The officers and other vehicles were forced to veer into another lane to avoid hitting him.  *Id.*  The court held that this behavior suggested that the defendant intended to obstruct traffic and gave the officers probable cause to arrest him.  *Id.*

The facts here are significantly different.  Unlike in *Greene*, Smith did not observe Auderer approaching and deliberately step into the road in front of him.  Smith already was walking in the middle of the road when Auderer arrived.  Unlike in *Greene*, Smith did not change his behavior in order to affect traffic.  There is no evidence that Smith saw Auderer

7

before he stopped. And after he saw Auderer, Smith simply remained in the middle of the road. Finally, unlike in *Greene*, Smith's conduct did not dramatically affect traffic. Auderer came to a stop, but there was no other traffic around.

There was no direct evidence that Smith intended to obstruct traffic. The evidence supports the conclusion that Smith was walking in the road – and behaving oddly – because he was intoxicated.

        c.    Inference of Intent

In the absence of direct evidence of intent, the question here is whether an intent to obstruct traffic can be inferred from the fact that Smith was walking in the middle of the road and did in fact obstruct Auderer's vehicle. As noted above, intent can be inferred if the defendant's conduct and the surrounding circumstances indicate that such intent is logically probable, but not if the evidence is patently equivocal. *Vasquez*, 178 Wn.2d at 8. And intent can be based on an inference or a permissive presumption that a person intends the natural and probable consequences of his or her acts. *Bea*, 162 Wn. App. at 579.

Two factors suggest that an inference of intent is not appropriate here. First, intent to block traffic is not logically probable here because of Smith's obvious intoxication. As noted above, there is no evidence that Smith's intoxication prevented him from forming an intent to block traffic. But that intoxication and the related odd behavior provided a logical explanation for why Smith was in the middle of the road.

Second, as the Supreme Court emphasized in *Webster*, a person has a right to "innocently" walk in a public road. 115 Wn.2d at 641-42. If that is true, it would make little sense to infer intent to block traffic from Smith's mere presence in the middle of the road.

No. 48131-6-II

We hold that under the totality of the circumstances in this case, it is not appropriate to infer that Smith had the intent to obstruct traffic when he walked in the middle of the road.

CONCLUSION

Neither the evidence nor a reasonable inference from that evidence supports a conclusion that Smith had the intent to block traffic as required to establish disorderly conduct under RCW 9A.84.030(c). Therefore, Auderer lacked probable cause to arrest Smith for disorderly conduct. Because Smith's arrest was unlawful, the search incident to arrest also was unlawful.

We hold that the trial court did not err in suppressing the evidence and dismissing the unlawful possession charge against Smith. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
JOHANSON, J.

_____
MELNICK, J.

9